HIRAM TATMAN, Appellant, *v.* JACOB STRADER, Appellee.

APPEAL FROM McDONOUGH.

Horse racing is gaming; and comes within the meaning of the statute designed to prevent offenses of that character.

THIS was an action of assumpsit, tried at March term, 1859, of the McDonough Circuit Court. The suit was commenced by plaintiff in error to recover from defendant $500, won by him from plaintiff on a horse race, run in said county in the spring of 1858, the same having been paid over to defendant by a stakeholder.

The declaration contains the common money counts, including a count for money had and received.

Defendant filed three pleas. 1st. General issue, upon which issue was joined. 2nd. That plaintiff contributed $100, Webb $250, Phelps $100, and Zimmerman $50; making in all $500, which was placed in the hands of plaintiff, to be by him wagered and bet, for and in behalf of all the contributors, with defendant, against a like sum of $500, on a certain horse race then about to be run. That the same was bet with defendant, and the plaintiff and defendant each placed in the hands of a stakeholder the sum of $500, as a wager on the result of the race. That the race was run, and decided in favor of defendant; that thereupon the stake-holder paid over the money to defendant at the request of plaintiff, and he received and retains the same, as he lawfully might do, etc.

The third plea omits the contribution of the money by other persons, and avers that the same was won and received by defendant, on a wager, as stated in the second plea. Plaintiff demurred to both of defendant's special pleas, and assigned as a special cause of demurrer, that the second plea assumes to answer the whole declaration, and only answers a part. Defendant joined in demurrer, and the court, BAILEY, Judge, presiding, overruled said demurrer as to both of said pleas, and rendered final judgment against plaintiff for costs.

Plaintiff assigns for error the overruling said demurrer to each of said pleas, and rendering judgment against him for costs.

C. L. HIGBEE, for Appellant.

L. H. WATERS, for Appellee.

CATON, C. J. The only question in this case is, whether horse racing is gaming within the provision of our statute. The words of the statute are, " Won at any gaming, or playing at cards, dice, or any other game or games." In our language, the word game has a very broad and comprehensive significa-tion. It means sport of any kind, and means physical contests, whether of man or beast, when practiced for the purpose of deciding wagers or rewards, or for the purpose of diversion, as well as games of hazard or skill by means of instruments or devices. Such were the Olympic and Nemean games among the Greeks, the former of which are lately being revived, and Apollinarian and Capitoline games among the Romans. A cock kept for fighting is called a game cock. A game man or animal of any kind, is one possessed of spirit and courage, and physical strength and endurance, qualifying him for personal contests. We might give illustrations almost endless, showing that the ordinary and popular understanding of the word gam-ing includes feats of physical power and skill, as a game of quoits, of ball, or of goal, the latter of which is played without any instrument, but depends on speed and skill alone. It may be that in some places games with cards and dice and the like, which are said to be followed by a kind of traveling professors, who are ranked with thieves and pickpockets, have so engrossed the public attention, that the more manly games, where physical prowess and skill determine the contest, that the latter are quite lost sight of or forgotten, and some may be so ignorant as hardly to know there are such games; but such we cannot pre-sume was the case with the legislature which passed this law, nor can it alter the well-known meaning of the word used.

If this were an entirely new question, we could not hesitate as to how we should decide it, but it is not so. The word game has a legal signification as well known as any other word used in the statute, and its legal meaning corresponds precisely with its historical and popular meaning.

Our statute is a substantial copy of 9 Anne, chap. 14, § 1, and the English courts have uniformly held, and in numerous cases, that both horse races and foot races are included in the words " game or games," but the effect of these decisions is attempted

to be avoided by the supposition that this statute was enacted in aid of the 16 Charles II., chap. 7, § 1. That statute made a variety of games unlawful, and, among others, specially enumerated, horse races and foot races, while these are not enumerated in 9 Anne. And some of the judges, in the decisions referred to, have adverted to both statutes and said, that inasmuch as the first statute passed did not make the bets void, but only the games unlawful, they inferred that the last statute, which did make the bets void, the same as our statute does, was in aid of the first, and therefore construed the two together; but a careful examination of those decisions will show that this is thrown in rather as a make-weight in the argument, than as the basis of the decisions, and those cases were so decided because the 9 Anne makes all bets upon games void. But all this argument is completely overthrown by the case of *Clayton* v. *Jennings*, 2 W. Blackstone, 706. There the action was for a wager won on a horse race, and the defense was, that the promise was void under the statute of Anne, it being a bet upon a game, and the answer in argument was the same as now urged, that horse racing had been held to be included in the word game, because horse racing had been rendered unlawful by the statute of Charles II., in aid of which the statute of Anne had been passed, but that now the statute of 13 Geo. II., chap. 19, § 2, had made horse racing lawful again, and authorised the racing of horses for money; but the court held, that betting on a horse race was betting on a game, and unlawful and void, although the game itself was not unlawful. "And Ashton, J., mentioned the case of *Connor* v. *Quick*, in the King's Bench, about ten years ago, when the court took a distinction between running a horse for (fifty pounds) £50, which was lawful, and betting on the side of the horse, which was not so." It can hardly be denied then that the English courts have held, and do hold, that the words "any game or games," in the statute of Anne, do, in and of themselves, by their own force, include horse races and other games of muscular contest. The rule is too well settled to require references for its support, that when one State or country adopts the statute of another State or country, which has received a well-settled and well-known judicial construction in that country, such construction is presumed to have been adopted with the statute. This same statute of Anne has been adopted in several of our sister States, where it has received the same construction given it by the English courts. In *Shropshire* v. *Glascock*, 4 Missouri, 536, the court held that horse racing is included in the words "other game or games," after cards and dice had been enumerated, not only because such is the proper meaning of those words, but because

the statute of Anne had been so construed in England. The same question was again argued before the same court in *Boynston* v. *Curl,* 4 Missouri, 599, with the same result.

But it seems like a waste of time to multiply authorities or to extend an argument, to show that the law means what it says. The law says, " any game or games," thereby expressly including athletic and other games of muscular strife, as well as games of hazard and skill, played with instruments.

The decision of the Circuit Court was wrong, and its judgment must be reversed and the cause remanded.

*Judgment reversed.*