### STONE et al. v. CLAY.

(Circuit Court of Appeals, Seventh Circuit. May 1, 1894.)

No. 117.

CONTRACTS—INTERPRETATION—RACING RULES.

Racing rules defined a "sweepstakes" as a race "for which the prize is the sum of the stakes which the subscribers agree to pay for each horse nominated," and provided that the entry, making one a subscriber, "shall be made by writing, signed by the owner of the horse," and that "a person entering a horse thereby becomes liable for the entrance money, stake, or forfeit." *Held*, that a "free handicap sweepstakes," by an entry for which, under the rules, liability was not incurred absolutely, but only on condition that the horse should not be declared out, was not a "stake race," within the meaning of a proposal for a subsequent race with extra weight for winners of stake races.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was a bill of interpleader by the Washington Park Club making defendants Kinzea Stone and Thomas J. Clay, in which Dudley Allen, claiming a joint interest with Stone, was allowed to intervene. The fund was awarded to Clay. Defendants Stone and Allen appealed.

This dispute is over the outcome of a horse race. In the fall of 1889 the Washington Park Club, of Chicago, a corporation organized under the laws of Illinois, advertised among the events of the ensuing summer meeting the following proposal for a race to be run July 17, 1890, "entries to close by October 15, 1889:" "The Hyde Park Stakes. A sweepstakes for two year olds (foals of 1888); $150 each, $50 f., or only $10 if declared out on or before February 1st, or $25 by April 1st, 1890. All declarations void unless accompanied by the money. With $5,000 added. The second to receive $1,000, and the third $500, out of the stakes. A winner of any stake race of the value of $1,500 to carry 3 lbs., of two or more stake races of any value, 5 lbs. extra; maidens allowed 5 lbs. Three-quarters of a mile."

One hundred and thirty-five horses were named or entered for the race, of which 16 only ran, and of these Balgowan, owned by the appellee, Clay, was declared the winner of the first money, and Kingman, owned by the appellant Stone, was declared winner of second money. Some days later, Stone demanded first money, on the ground that Balgowan had theretofore won two stake races, and, instead of carrying in this race, as he did, only 118 pounds, should have carried 5 pounds more. His demand having been denied by the board of racing stewards, composed of officers of the club, Stone brought a suit at law against the club for the amount of the first money, less the amount of second money, which had already been paid him. Thereupon the club brought a bill of interpleader, and, the appellant Allen,

who claimed a joint interest with Stone in the winnings of Kingman, having been allowed to intervene, the court ordered the money deposited in the registry, and that the claimants present their respective statements. The issue formed between them was referred to a master, whose report, over exceptions by the appellants, was confirmed, and a final decree entered in favor of the appellee. The chief question in dispute is whether a race which Balgowan had won upon the track of the Washington Park Club, July 5, 1890, was a stake race. If it was, he had won two races of that character, and should have carried five pounds extra weight in this race. The race of July 5th was announced as follows: "A free handicap sweepstakes. For two year olds. Of $15 each, if not declared, with $600 added; the second to receive $100 out of the stakes. Entries to be made Thursday, July 3rd. Weights to be announced and declarations to be made Friday, July 4th. Three-quarters of a mile." For that race 43 horses were named, but, after the announcement of weights, 32 were declared out. Balgowan won, and his owner received of the club $665, the owner of the second horse receiving $100.

The Washington Park Club is a member of the American Turf Congress, which is governed by a code of rules known as the American Racing Rules, of which the following are more or less relevant here: "(4) Race: Any contest for 'purse,' 'stake,' premium, or wager for money, or involving admission fees, on any course, and in the presence of a judge or judges, shall constitute a race. (5) Purse: A 'purse' is a sum of money or other prize offered for a race. (6) Sweepstakes or Stake: A 'sweepstakes' is a race publicly declared open to all complying with its conditions, for which the prize is the sum of the stakes which the subscribers agree to pay for each horse nominated; and, if an additional sum of money, cup, plate, or other reward is offered to the winner, the race is still a sweepstakes, whatever may be the name given to such addition. Three subscribers, unless otherwise stipulated in its conditions, make a sweepstakes, and the race is not void so long as there is a horse qualified to start." "(8) Handicap: A 'handicap' is a race for which the horses are weighted according to their merits in the estimation of the handicapper, for the purpose of equalizing their chances of winning. (9) Free Handicap: A 'free handicap' is one in which no liability is incurred for entrance money, stake, or forfeit, until acceptance of the weight allotted, either by direct acceptance or through omission to declare out." "(14) Conditions Supersede Rules: The express conditions of a race supersede the rules of racing when they conflict. (15) Entries and Subscriptions: Entry shall be made by writing, signed by the owner of the horse, or by some person deputed by him," etc. "(31) A subscription to a stake cannot be withdrawn," etc. "(34) The death of a horse, or a mistake in the entry of a horse, when eligible, does not release the subscriber or transferee from liability for a stake or forfeit." "(37) Liability for Stakes and Forfeits: A person entering a horse thereby becomes liable for the entrance money, stake, or forfeit. A subscriber to a sweepstakes is liable for the stake or forfeit," etc.

Oliver & Showalter, for appellants.

Charles H. Aldrich and William Brace (Aldrich, Payne & Defrees, of counsel), for appellee.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge (after stating the case). It seems to be settled law in Illinois that horse racing is gaming, within the meaning of the statute of the state authorizing the recovery of money lost "at any gaming, or playing at cards, dice, or any other game or games." Tatman v. Strader, 23 Ill. 493; Mosher v. Griffin, 51 Ill. 184; Garrison v. McGregor, Id. 473; West v. Carter, 129 Ill. 249, 21 N. E. 782. See, also, Morgan v. Beaumont, 121 Mass.

7; Gibbons v. Gouverneur, 1 Denio, 170. In Harris v. White, 81 N. Y. 532, where the subject is considered at length, a bet or wager is defined to be "ordinarily an agreement between two or more that a sum of money or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them on the happening in the future of an event in the present uncertain;" and, as distinguished from that, a purse, prize, or premium is defined to be "ordinarily some valuable thing, offered by a person for the doing of something by others, into the strife for which he does not enter." It having been urged in that case "that the payment of entrance fees by the defendant for his horses was a staking of so much of his own money upon the result," the court said:

"So it might have been, if the entrance fees went immediately to make up the purse trotted for. * * * The fees went into the treasuries of the associations and the prizes came out of those treasuries; but the fees were not money paid, as in Gibbons v. Goveneur, supra, for the express purpose of making a stake to be specifically trotted for, and for no other purpose, and with the previous agreement that the very sums thus paid should form the stake, and to go, the whole of it, to the winner of the race."

In West v. Carter, supra, which grew out of a race upon the track of the Chicago Driving Park Association, the supreme court of Illinois said:

"Agricultural societies, stock and other associations organized for the purpose, and having for their object, among others, the improvement of domestic animals, and to induce competition and rivalry in their importation and development, may offer premiums or purses to exhibitors of such animals, without being guilty of violating the Criminal Code. On the other hand, the law will not tolerate any shift or device upon the part of any association or individual whereby, under the pretense of bettering the condition or developing and improving the stock, gambling is intended or permitted."

It is plain enough in this case that the entrance fees, and forfeits of those whose horses were declared out, "went immediately to make up the purse" for which the race was run. They were paid or promised to be paid for the express purpose of making up the stake, and for no other purpose, and with the previous agreement that the very sums thus paid should form the stake, and go all to the winners of the race. That is the plain meaning of the proposal, and that the parties so understood it is shown by the fact that, without objection from any one, unpaid forfeit orders to the amount of $1,550 were brought into court under the bill of interpleader as a part of the fund to be disposed of. There is therefore no support for the interpretation of the proposal, so often reiterated in the brief of appellants, to the effect that the club was bound to pay to the winners of the race "a sum of money equal to $5,000, plus a sum equal to the aggregate of all entrance fees and of all forfeits,"—invoking, in order, it would seem, to avoid an imputation of invalidity under the statute against gaming, the distinction recognized by the courts in respect to champerty between contracts to give a part, and contracts to pay a sum equal to a stated part, of the proceeds of litigation; the latter being held to be valid, while the first is illegal. But that distinction, if it is not in itself a

vicious one, which, without promoting justice, has tended to bring reproach on the courts and upon the legal profession, is not one which should be extended by analogy to other subjects, especially to one concerning which, as we have seen, it has been said "the law will not tolerate any shift or device," whereby, under pretense of some lawful purpose, "gambling is intended or permitted." But, as this question has not been argued, and was not suggested at the hearing, we refrain from deciding it.

Treating the case as one of which the court may take cognizance, we agree with the position of the appellee that the race of July 5th was not a stake race, because the prize was not "the sum of the stakes which the subscribers agreed to pay for each horse nominated." Upon this point the argument for the appellant is as follows:

"In the race of July 5th, it is argued, thirty-two horses were nominated, and the persons nominating them paid nothing. But the said thirty-two were not subscribers, and did not agree to pay anything. The only persons who became subscribers, and who each, by subscribing, agreed to pay the $15 entrance fee, were the eleven who did so pay. The entry is not made—there is no contract—in a free handicap till it is signified by the nominator that the weight is satisfactory. A subscription to a race involves an agreement to pay the stake or entrance money. One is not a subscriber (rules 31, 34. 37) till he becomes bound. If, again, we say that a stake race 'is a race * * * for which the prize is the stake which the nominators agree to pay for each horse nominated,' the argument still fails, for the thirty-two did not agree to pay. No agreement to pay was made till made by the eleven who accepted the weights; and, as to them, the race became then a common sweepstakes. No one of the eleven could get out, after accepting, without forfeiting $15, the amount of the stake or entrance fee; and one or two it appears did so forfeit and pay said entrance fee."

But rule 15, entitled "Entries and Subscriptions," requires that "entry shall be made by writing, signed by the owner of the horse;" and it is the act of entry, as we understand, which makes one a subscriber. As it is expressed in rule 37: "A person entering a horse thereby becomes liable for the entrance money, stake, or forfeit;" that is to say, in a stake race he becomes absolutely liable to the extent of the prescribed forfeit, and liable for the entrance money or stake, on condition that within the time allowed his horse shall not be declared out; but in the free handicap, to which class the race of July 5th belonged, while he does not become absolutely liable at first for any sum, he does, by entering his horse, become liable for the entrance fee on condition that his horse shall not be declared out. In other words, there is absolute liability on the part of the subscriber only in the stake race, but in both the stake race and the free handicap there is a conditional liability; the condition in one, the same as in the other, being that the horse shall not be declared out.

It is therefore ordered that the decree below be affirmed.