Hawthorne Kennel Club, Appellant, v. John A. Swanson, State's Attorney et al., Appellees.

Gen. No. 34,356.

500

Opinion filed May 16, 1930.

LITSINGER, HEALY & REID, for appellant.

JOHN A. SWANSON, State's Attorney, for appellees; JOHN E. NORTHUP, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

May 9, 1928, complainant filed a bill in equity and later a supplemental bill to enjoin the State's Attorney and the sheriff of Cook county and town officials of the town of Cicero, their deputies and agents, from preventing the operation, or interfering with the use of complainant's track and grounds in said town for

the running of dog races and the payment of so-called prizes.

Two days later the court granted a temporary injunction for such relief and with the exception of about three weeks such an injunction has been kept in full force and effect to the present time.

Defendants answered, averring among other things, that in connection with the dog races conducted by complainant, it operated and maintained a common gaming house, in violation of the laws of the State. Reference was had to a master in chancery who recommended the relief prayed for. Exceptions to his report were sustained and a decree was entered dismissing the bills for want of equity, but continuing the temporary injunction in force pending the final disposition of the cause in the Supreme Court to which an appeal was allowed. The appeal having been improperly taken to that court on the mistaken theory that the issues involved the validity of the so-called Horse Racing Act of 1927 (Laws of 1927, Cahill's Stat. 1929, ch. 38, pars. 316 [1]–316 [17]), the case was transferred to this court (339 Ill. 220.) In view of its importance it has been advanced for hearing.

Complainant maintained and operated a race course for dogs where persons were permitted to come together and engage in or patronize what is known as the ''Pari-Mutuel or Certificate System'' of wagering on the results of dog races conducted at such grounds by complainant.

In its appeal to the Supreme Court appellant took the position that if, as now held by that court, the validity of the Horse Racing Act, Cahill's St. ch. 38, ¶ 316 (1) *et seq.,* is not involved, and if it be held that the pari-mutuel system of wagering is not unlawful, nor prohibited by said act, the act is not involved at all. On the other hand if it be unlawful and in violation of any other statute then no necessity arises for the construction of said act. Counsel proceeds to

argue that the pari-mutuel system of wagering, considered as mere betting, is not prohibited by the common law, nor expressly prohibited by statute unless the Horse Racing Act be so construed. The logic of the argument is that use of such system in conducting dog races cannot be regarded as a violation of either the Gaming Act (section 127 of the Criminal Code, Cahill's St. ch. 38, ¶ 305) or of the Pool Selling Act of 1887 (Cahill's Stat. 1929, p. 947, ch. 38, ¶ 316): not under the former because placing money under such a system on dog racing is not "playing money at a game" within the meaning of said act, and not under the latter because such method or system is not embraced within the term "Pool Selling" as prohibited by the Pool Selling Act.

We cannot concur with either of these conclusions and therefore need not attempt to apply the Horse Racing Act to this case further than to note that it expressly recognizes said system as a form of wagering and gambling and excludes its being conducted at any races except horse races at the race track where such system is conducted. (Section 10 of said act.)

While counsel cites cases from other jurisdictions in support of the contention that money placed on the results of horse racing is not gaming, such rulings are not in harmony with the construction given the Gaming Act by the courts of this State. We need only to refer to *Tatman v. Strader,* 23 Ill. 493 and *Swigart v. People,* 154 Ill. 284, and authorities there cited as decisive of that question. The reasoning whereby our Supreme Court has thus held that betting on a horse race is gaming and a violation of the statute is equally applicable to betting on dog racing. While the gambling practice in the *Swigart* case was book-making and the selling of pools, as forbidden by the Pool Selling Act, and was not specifically described as the pari-mutuel system, yet such system is neverthe-

less one of selling pools. Under it the money the several patrons bet or wager on the contest of speed by the racing animals is placed in a common pool from which is distributed to those betting on the winning animals the amounts of money their respective tickets or certificates bought under such system call for. The very argument of counsel for appellant concedes that said system is a form of betting, and the circumstances and methods by which it was conducted on complainant's premises, as disclosed by the evidence, constitute a clear violation of both the gaming and pool selling acts, of the former by "permitting persons to come together to play for money at a game"—that of dog racing, and of the latter by selling pools upon the result of a trial or contest of speed of beasts.

We shall not attempt to follow the somewhat specious reasoning whereby counsel for appellant attempts to distinguish the method employed by complainant from gambling by a form of receipt printed on the back of the ticket the patron receives for his money acknowledging the sum so paid as "a voluntary contribution to the prize to be awarded to the owner of the dog." In the face of the actual facts importing a clear case of intentional gambling such language is a mere subterfuge and affords no basis for convincing argument.

Holding then, as we do, that the facts and circumstances of the case disclose a clear violation of the criminal statutes, which it was the legal duty of the State's Attorney and the other defendants in the exercise of their official duties to suppress it was clearly not within the power of a court of equity to enjoin them from the performance of such official and political duties. As said by Mr. Chief Justice Fuller in *World's Columbian Exposition v. United States*, 56 Fed. Rep. 654, a court of equity "is conversant only with questions of property and the maintenance of

civil rights and exercises no jurisdiction in matters merely political, illegal, criminal or immoral.'' In *People v. Barrett,* 203 Ill. 99, 107, quoting from *In re Sawyer,* 124 U. S. 200, the court said:

''The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law or of the executive and administrative department of the government.''

It is needless to cite other cases on this fundamental proposition. If on the face of the bill there is any showing for the intervention of a court of equity to protect property rights the answer must have disclosed to the court that it was a mere pretext to avoid prosecution under the criminal statutes. While the temporary injunction was granted before the filing of the answer the very nature of the case should in view of the doubtful propriety of the injunction and its effect upon public interests, have prompted immediate inquiry by the chancellor into the facts.

Nor does the contention that raids and arrests were made of persons or patrons on complainant's racing grounds without warrants and not ''on view,'' furnish a basis for a bill to enjoin the State's Attorney or such officers of the law from the performance of their duties in the future. The bills were wholly without merit and properly dismissed.

But while the decree will be affirmed so far as it dismisses the bill and supplemental bill for want of equity it must be reversed, at appellant's costs, so far

as it continues said temporary injunction in full force and effect pending a final disposition of this cause in the Supreme Court, which has operated to permit an open violation of the law for about two years. The insertion of this provision in the decree is without precedent or authority. This is not an appeal from an order entered on a defendant's motion dissolving a temporary injuction under the Injunction Act, Cahill's St. ch. 69, ¶ 21, wherein an injunction may be continued under section 21 of the act. The practice in such a case is well established. (*Titus v. Mabee*, 25 Ill. 257; *Weaver v. Poyer*, 70 Ill. 567; *Prout v. Lomer*, 79 Ill. 331; *Williams v. Chicago Exhibition Co.*, 188 Ill. 19.) Here the temporary injunction though once vacated was restored and the case heard on the master's report as to his conclusions on the merits of the case. It is anomalous that a court after such procedure should dismiss a bill for want of equity and at the same time give the complainant equitable relief under it.

That such a plain violation of the law as the facts of this case disclose should be countenanced and prolonged for two years under forms of judicial procedure is so repugnant to the theory on which courts of justice are organized as not to be viewed with complacency, and must, therefore be condemned.

*Affirmed in part and reversed in part.*

SCANLAN and GRIDLEY, JJ., concur.