## Lawrence Weiss, Appellee, v. Morris Schachter, Trading as Ticker Tape Cigar Store, Appellant.

### Gen. No. 36,748.

Opinion filed May 2, 1934.

LEOPOLD B. MELNICK, for appellant.

J. CLYDE STEWART, for appellee.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

On January 10, 1933, a judgment by confession on a judgment note was entered in favor of plaintiff and against defendant in the sum of $936.50, which included interest and $112.50 as attorney's fees, together with the costs of suit. The note as originally executed was made payable to Sylvia R. Hoffman, and by her indorsed and transferred to the plaintiff. On

January 24, 1933, a motion was made by defendant to vacate the judgment and for leave to plead and defend. This motion was supported by a petition verified by the defendant in which it is alleged that the note upon which the judgment was entered is wholly void by reason of the fact that it was given for a gambling transaction; that Sylvia R. Hoffman wagered and bet with petitioner upon the outcome of horse races the sum of $2,500 on or about January 16, 1932; that petitioner lost on said wagers and bets to Sylvia R. Hoffman the sum of $5,800; that petitioner on or about January 16, 1932, because he lost the said wagers and bets to Sylvia R. Hoffman, delivered to her the sum of $5,000 in currency; that petitioner later on July 8, 1932, delivered to Sylvia R. Hoffman a note in the sum of $800 for the balance of said wagers and bets which he lost to Sylvia R. Hoffman, which is the note upon which judgment is entered in this case, and by reason that the said note was given for a gambling debt, it is, therefore, without legal consideration and void.

Plaintiff cites Cahill's Illinois Revised Statutes, 1931, chapter 38, ¶ 316(1), entitled, ''An Act to provide for, regulate and license horse racing in the State of Illinois; to legalize and permit the pari-mutuel or certificate method of wagering on the result of horse races at licensed racing meetings in said State; to render inapplicable certain Acts in conflict therewith, and to provide penalties for the violation thereof,'' as authority for the proposition that inasmuch as the note in question was given in payment of money lost on a horse race, that the transaction is within the statute, and, therefore, legal and binding.

The facts set forth in defendant's petition are not disputed. There is nothing in this transaction, however, which indicates at all that the note in question was given in payment of a bet made under the mode provided by this statute. So far as the petition shows,

it was a transaction between the two parties. The act in question provides in terms for the creation of a horse racing commission, that every person, association or corporation desiring to conduct horse racing shall be licensed, post a bond, and that the wagering shall be done under the pari-mutuel system.

In *People v. Monroe,* 349 Ill. 270, James O. Monroe was charged with the violation of the act in question. He was found guilty, and on appeal, the constitutionality of the act was raised in the Supreme Court. The statement of the case indicates that Monroe conducted a horse race track in Madison county, where the pari-mutuel system of betting was adopted, but that he made no effort to in any way comply with the other features of the statute. The act was held to be constitutional, and inasmuch as the defendant had not complied with all the terms thereof, the judgment was affirmed. In that case, pari-mutuel is defined as "A form of betting on horses in which those who bet on the winning horse share the total stakes, less a small percentage to the management," and in commenting upon the act, the court says: "While the amount of money to be divided is indefinite as to dollars and cents, it is definite in that the amount of money to be divided is the total stakes on the winning horse, less a given percentage to the management. The persons among whom the money is to be divided are not uncertain, as they are 'those who bet on the winning horse.' The winning horse is not determined by chance, alone, but the condition, speed and endurance of the horse, aided by the skill and management of the rider or driver, enter into the result. . . . In our opinion, the pari-mutuel system does not come within the constitutional inhibition as to lotteries."

The Standard Dictionary defines pari-mutuel, or Paris Mutuals, as "a pool in betting as in a horse race, in which each bettor lays a fixed sum on the contestant that he selects, and those who choose the winner, divide

the entire stake, less the percentage of the person who furnishes the pool tickets; literally, mutual bets.''

As stated, in the case at bar, as shown by the motion to vacate the judgment, the betting was between two persons on the outcome of a horse race, and the note sued on was given to pay a loss on such bet.

In *Hawthorne Kennel Club v. Swanson,* 257 Ill. App. 499, this court said:

''While counsel cites cases from other jurisdictions in support of the contention that money placed on the results of horse racing is not gaming, such rulings are not in harmony with the construction given the Gaming Act by the courts of this State. We need only to refer to *Tatman v. Strader,* 23 Ill. 493, and *Swigart v. People,* 154 Ill. 284, and authorities there cited as decisive of that question.''

In *Shaffner v. Pinchback,* 133 Ill. 410, the Supreme Court said:

''That betting money on a horse race is gaming, and in violation of law, was decided in *Tatman v. Strader,* 23 Ill. 493, and that a contract in aid of the offense of gaming, which is prohibited by statute, is void, and can not be recovered upon, was held in *Mosher v. Griffin,* 51 Ill. 184.'' No question is raised here but that the plaintiff is in the same position as would be the original payee if the action were by her.

From the record here, it is apparent that if the facts set forth in the petition are true, the note in question was given in a transaction which is in violation of the law, and that the trial court should have allowed the defendant to present his defense. The judgment of the municipal court is, therefore, reversed and remanded.

*Reversed and remanded.*

Wilson and Hebel, JJ., concur.