## FRANZ L. BRACONIER vs. HENRY H. PACKARD.

Plymouth.    October 16. — 30, 1883. · FIELD & W. ALLEN, JJ., absent.

Under the Pub. Sts. c. 100, § 5, and the St. of 1882, c. 164, the mayor of a city, in signing a license for the sale of intoxicating liquors, performs a merely ministerial duty; and, if a license is granted by the board of aldermen, the signing by the mayor may be enforced by mandamus.

It is no objection to the validity of a license for the sale of intoxicating liquors, granted by the board of aldermen of a city, that the board did not act in accordance with their usual modes and their rules of procedure, if the rules were suspended.

A notice, published in a newspaper, of an application for a license to sell intoxicating liquors, gave the first name and surname and the initial letter of the middle name of the applicant, the class of the license applied for, and described his place of business as "in a building known as K.'s Block, on the easterly side of M. Street, at the corner of S. Street." The applicant had a druggist's sign in front of the shop occupied by him in K.'s Block, which shop was the third from the corner of the two streets; neither the block nor the street was numbered; and the applicant wrote his name as it appeared in the published notice. *Held,* that the notice was a sufficient compliance with the Pub. Sts. c. 100, § 6.

PETITION for a writ of mandamus, to compel the mayor of the city of Brockton to sign a license for the sale of intoxicating liquors, granted to the petitioner by the board of aldermen of Brockton.    Hearing before *Field,* J., who reported, for the consideration of the full court, the following case.

The petitioner was a druggist and apothecary, having a place of business in that part of Brockton known as Campello, on the east side of Main Street, in Keith's Block.    He had a druggist's sign in front of the shop occupied by him in the block, the shop being the third from the corner of Main Street and South Street, and there being other shops south of his in the same block, and tenants in the basement and upper story thereof. His name in full was Franz Leonard Braconier, but he wrote it Franz L. Braconier.

On May 4, 1883, the petitioner filed with the city clerk of Brockton a petition for a license to sell intoxicating liquors of the sixth class.    The city clerk, by general direction of the chairman of the committee on licenses of the board of aldermen, published in a daily newspaper in Brockton, the last publication being ten days before any action was had on the petition by

the board of aldermen, notice of an application by "Franz L. Braconier, for a license of the sixth class as a druggist, his place of business being in a building known as Keith's Block, on the easterly side of Main Street, at the corner of South Street." After said notice was published, the petition was taken from the clerk by the chairman of the committee on licenses of the board of aldermen, for action by the committee. The usual mode of procedure of the mayor and board of aldermen of Brockton, with relation to an application for a license to sell intoxicating liquor, is for the application to be presented to the board by the chair, and by them referred to the committee on licenses of said board. This was not done in all cases, nor in this case, and three other petitions at least were granted without any such reference by said board. The petition in this case was not actually in the room when said board acted upon the report of the committee of licenses upon said petition, but was in the adjoining room in the vault, with and in the files of the city clerk and the records of the city. The rules and orders of the board of aldermen provide that " all papers addressed to the board shall be presented by the chair, and shall be acted upon in the order in which they are presented, unless the board shall otherwise determine."

On June 4, 1883, at a regular meeting of said board, the committee on licenses reported that the petition should be granted. This report was accepted, and the board, under suspension of the rules, voted to grant a license of the sixth class to the petitioner; the city clerk afterwards made out and signed a license of the sixth class to the petitioner, and requested the respondent to sign the same, as mayor of said city, which he refused to do. The petitioner paid to the treasurer of said city the fee required by law for said license, namely, one dollar, and filed with said treasurer the bond required, which was satisfactory to him, and thereupon the petitioner requested the respondent to sign said license as mayor, which he refused to do. The petition filed with the clerk by the petitioner was not brought before the board of aldermen for any action thereon prior to said report of the committee on licenses to the board.

Prior to the granting of the license to the petitioner, the board of aldermen had refused to grant any license of this class

to other druggists in said city, but did grant them licenses of the fourth class, for which the board established a fee of $350.

If, on these facts, the petitioner is entitled to a writ of mandamus, a peremptory writ of mandamus is to issue; otherwise, the petition to be dismissed.

*C. W. Sumner*, for the petitioner.

*H. L. Gibbs*, for the respondent.

MORTON, C. J. It is provided by the Pub. Sts. *c.* 100, § 5, that, in cities, licenses to sell intoxicating liquor " may be granted annually by the mayor and aldermen," and that every license shall be signed by the mayor and by the clerk of the city by which it is issued. The St. of 1882, *c.* 164, provides that, "in all laws relating to cities, the words mayor and aldermen shall, unless provision is or shall be otherwise made, be construed to mean board of aldermen."

By these statutes, the responsibility of granting or refusing licenses is cast upon the board of aldermen; and the mayor, in signing the licenses, like the city clerk, performs a merely ministerial duty. If the board of aldermen grant a license, and the licensee does what the statute requires of him, by paying the license fee and filing his bond, he is entitled to his license, and it is the duty of the mayor to sign it; a duty which will be enforced by mandamus, unless the mayor shows sufficient cause why such a writ should not be issued.

It is not the intention of the statutes that the mayor should have the power to revise the proceedings of the board of aldermen, and practically set them aside, if he should deem them to have been irregular or illegal. Upon this question, the licensee has the right to a trial before a judicial tribunal. Pub. Sts. *c.* 100, § 6. But inasmuch as this court would not, in its discretion, grant a writ of mandamus to compel the mayor to sign a license, if the proceedings of the board of aldermen in granting it were clearly illegal, we have considered the objections made by the respondent in this case.

The objection that the board of aldermen, in granting this license, did not act in accordance with their usual modes and rules of procedure, has no force. The board suspended its rules. It is within the power of a deliberative body to suspend, waive, or modify its rules of procedure if it sees fit. *Holt* v. *City Council of Somerville*, 127 Mass. 408.

The principal objection to the proceedings of the board of aldermen is that the notice of the application for a license, published in the newspaper, was not sufficient. The statute requires that the notice shall "set forth the name of the applicant in full, the class of the license applied for, and a particular description of the premises on which the license is to be exercised, designating the building or part of building to be used, and, if practicable, the street and number." Pub. Sts. *c.* 100, § 6. And it further provides, that, if a license is granted without such previous publication, any citizen of the city may make complaint to a judicial tribunal and cause a revocation of the license. The object of the provision is to give full information to the public of the person who applies, and of the place where the license is to be exercised, so that any citizen may object to the granting of the license.

It seems to us, that, if these requirements are substantially complied with, so that it appears that the purpose of the statute is satisfied, it is sufficient; and that it would be too strict a construction to hold that any immaterial departure from the literal terms of the statute would invalidate a license. In the case before us, the notice published was of an application by " Franz L. Braconier, for a license of the sixth class as a druggist, his place of business being in a building known as Keith's Block, on the easterly side of Main Street at the corner of South Street." It is not contended that the block or the street was numbered. This notice designates the building, in which the license is to be used, as Keith's Block, at the corner of Main and South Streets, and the part of the building as the druggist shop of the applicant in said block. He had a druggist's sign in front of his shop, and no one could fail to understand the precise place intended; and we are of opinion that it was a sufficiently particular description of the premises on which the license was to be exercised.

The description of the applicant as Franz L. Braconier, using the initial letter of the middle name, instead of the whole name, is in our opinion immaterial. He wrote his name and was known as " Franz L. Braconier," and this would be deemed to be his name in full in an indictment or other criminal proceeding against him. The use of the initial instead of the

whole middle name could not possibly deceive or mislead any one, and was a substantial and sufficient compliance with the requirements of the statute.

*Peremptory mandamus to issue.*