FRANK P. FITZGERALD *vs.* JOHN F. HURLEY.

Essex.    November 7, 1901. — November 26, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Intoxicating Liquors*, License.    *Municipal Corporations.*

The effect of St. 1894, c. 428, § 7, is to relieve the license commissioners of a city of all official duties and deprive them of all powers whenever the city votes that no licenses shall be granted, and for the time to transfer their powers and duties as to sixth class licenses to the mayor and aldermen. It has this effect in regard to the powers given by St. 1896, c. 397, regulating the practice of pharmacy and providing for the issuing of sixth class licenses to retail druggists and apothecaries.

PETITION for a writ of mandamus to compel the mayor of Salem to sign a license of the sixth class to sell intoxicating liquors to be issued to the petitioner, a retail druggist and apothecary, filed October 23, 1901.

The case came on to be heard before *Barker*, J., who, at the request of the parties, reserved it upon the petition and an agreed statement of facts for determination by the full court; with the agreement made in open court that if the board of aldermen of Salem had power to grant the license a peremptory writ of mandamus should issue as prayed for; otherwise, that the petition should be dismissed. In no case was either party to have costs.

*H. P. Moulton*, for the petitioner.

*B. B. Jones*, (*H. F. Hurlburt* with him,) for the respondent.

KNOWLTON, J.   Both parties agree that if the board of aldermen had a right to grant a license to the petitioner it is the duty of the mayor to sign it, and that the performance of this duty can be enforced by a writ of mandamus. *Braconier* v. *Packard*, 136 Mass. 50.

The only question before us is whether in cities in which a board of license commissioners has been chosen, and the inhabitants have afterwards voted no on the question "Shall licenses be granted for the sale of intoxicating liquors in this city" licenses of the sixth class can be granted to druggists and apothecaries by the aldermen during the year to which the vote applies.   In support of a negative answer to the question, either of two contentions might be made : first, that there is no power in any board to grant such licenses in such cities ; or secondly, that such licenses may be granted, but that the power to grant them is in the board of license commissioners and not in the mayor and aldermen.

The respondent does not make the first of these contentions, but relies upon the second.  We think he is right in his concession that such licenses may be granted.   To hold otherwise would be to set aside the purpose of the Legislature as it is expressed in a series of statutes.   By the Pub. Sts. c. 100, § 5, it is provided that licenses of the sixth class to druggists and apothecaries may be granted in any city or town, notwithstanding a negative vote on the general question whether licenses shall be

granted. By the St. 1887, c. 431, § 1, the granting of one or more licenses of the sixth class to retail druggists and apothecaries is made compulsory in all cities and towns " if the applicant is a fit person to receive such licenses " and this provision is continued in the St. 1896, c. 397, § 10, which is enacted as a substitute for the other. A doubt as to the present law has arisen because this last section says that the licenses shall be granted by the board of license commissioners in cities or the selectmen of towns, and makes no mention of the mayor and aldermen, while the St. 1894, c. 428, § 7, provides as follows : " If at any annual municipal election hereafter held in any city in which a board is appointed under this act such city shall not vote to authorize the granting of licenses for the sale of intoxicating liquor, then all obligations imposed upon said city by the preceding section shall cease from and after the first Monday of June next following such vote, and from and after said date the powers and duties granted to and imposed upon mayors and boards of aldermen by chapters one hundred and one hundred and two of the Public Statutes and acts in amendment thereof and in addition thereto, in respect to sixth class licenses . . . shall revest in the mayor and board of aldermen of said city. If, subsequently, said city shall, at an annual municipal election, again vote to authorize the granting of licenses for the sale of intoxicating liquor, the obligations imposed by the preceding section shall be revived and shall attach to said city from and after the first day of March next following such vote, and from and after said date the powers and duties of the mayor and board of aldermen in respect to licenses for the sale of intoxicating liquor . . . shall revest in the board of license commissioners," etc. The obligations referred to, "imposed by the preceding section," are to furnish rooms and pay the salaries and expenses of the license commissioners. It has been thought by some that, inasmuch as under this last section the powers of license commissioners in regard to the sixth class of licenses are taken away, and restored to the mayor and aldermen when their powers in regard to other licenses are terminated by a negative vote of the people, and inasmuch as the St. 1896, c. 397, § 10, mentions only license commissioners as the board to grant sixth class licenses in cities, there is no board that can grant

them. We do not so understand the law. The St. 1894, from which we have just quoted, gives to the mayor and aldermen, not only the powers and duties exercised by mayors and aldermen under chapters 100 and 102 of the Public Statutes, but also those exercised under the " acts in amendment thereof and in addition thereto, in respect to sixth class licenses." This plainly includes acts in amendment thereof and in addition thereto enacted afterwards, as well as those that had been enacted previously. The St. 1896, c. 397, although entitled " An Act to regulate the practice of pharmacy," deals with the whole subject of sixth class licenses to be granted to druggists and apothecaries, and is in that particular an act in amendment of the Pub. Sts. c. 100, and in addition thereto. The powers and duties referred to in the former of these two statutes, at the time of the enactment thereof, included the granting of all sixth class licenses. The object of the section quoted is to relieve the license commissioners of all official duties and deprive them of all powers, whenever a city votes that no licenses shall be granted, and to transfer their powers and duties as to sixth class licenses to the mayor and aldermen. When the law was amended in 1896, although the mayor and aldermen are not mentioned, the Legislature must be presumed to have known that by the St. 1894 the powers of license commissioners in regard to sixth class licenses under an affirmative vote as to granting licenses, and those of mayors and aldermen under a negative vote, were treated as identical, and that these powers of the commissioners would be taken away after such a negative vote. The fact that the obligation to provide a place for the commissioners and to pay their expenses and salaries ceases after a negative vote adds confirmation to this view of the statutes. It seems to us quite plain that the St. 1896, c. 397, was not intended to leave cities which vote no on the question of granting licenses with no board authorized to grant licenses of the sixth class to druggists and apothecaries.

For reasons already stated, we are also of opinion that the St. 1894, c. 428, § 7, leaves license commissioners in such cities with no power to grant any licenses, and transfers all their power with regard to granting licenses of the sixth class to the mayor and aldermen.

*Peremptory writ of mandamus to issue.*