CHARLES H. CHENEY & others *vs.* BARTHOLOMEW J. COUGHLIN & another.

Middlesex.     December 2, 1908. — February 26, 1909.

Present : KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* To restrain illegal use of building for keeping and sale of intoxicating liquors.  *Intoxicating Liquors.  License.  Municipal Corporations,* Officers and agents.  *Equity Pleading and Practice,* Report, Decree.

Under R. L. c. 101, § 8, the Superior Court has jurisdiction in equity to hear and determine a suit by ten legal voters of a town to restrain the keeping and sale of intoxicating liquors in a certain building in the town, although the defendant applied for and was granted a license to do so by the selectmen of the town and was conducting his business in accordance with the terms of the license, if it appears that the license was granted upon an application filed with the selectmen before the building was built and that the premises were described therein as a " building to be erected on " a certain lot, since the selectmen had no authority to grant the license and it therefore was void.

An application for a license to sell intoxicating liquors in a building " to be erected on " a certain lot in a town, which is filed with the selectmen, and publication of notice of which in accordance with R. L. c. 100, § 14, is made before the building is erected, is filed prematurely, and, although, at a hearing on such application, the selectmen postpone action thereon until a suitable building is erected on the premises, when they assume to grant the license, the license thus granted on such an application is wholly void.

A license granted under the provisions of R. L. c. 100, purporting to permit the sale of intoxicating liquors " at No. 34 and 36 on the southerly side of Main Street in the whole of said building, stock in cellar," the application for which sought a license for a " building to be erected on lot on southerly side of Main Street corner of River Street in whole of said building, cellar for stock only

of such building," is void because of the variance between the description of the premises in the application and that in the license.

Licenses under R. L. c. 100 for the sale of intoxicating liquors, as well as licenses under R. L. c. 102 for innholders, may be granted in months of the year other than April.

Where a case is reported by a judge of the Superior Court for determination by this court, and the terms of the report are that, if the rulings of the trial judge were right, a decree entered by him is to stand, " otherwise the rulings and decree are to be set aside and such decree entered as justice and equity require," and this court determines that one of the rulings of the trial judge was wrong, the decree entered nevertheless will not be set aside if it appears that the erroneous ruling did not affect either the form or the substance of the decree.

BILL IN EQUITY under R. L. c. 101, § 8, filed in the Superior Court for the county of Middlesex July 15, 1908, by ten legal voters of the town of Maynard, seeking to restrain the use of certain described premises for the alleged illegal keeping and sale of intoxicating liquors. The defendants were Bartholomew J. Coughlin, the owner of the premises, and Harry A. Clark, the occupant of them, whose application for licenses the selectmen had granted, as stated in the opinion.

The case was heard before *Wait,* J., who found the facts to be as stated in the opinion. His rulings in substance were as follows:

"Upon these facts I find that the innholder's license issued on May 22, 1908, to Harry A. Clark is valid. I rule that the description in the application filed March 25, 1908, for innholders and for first and fourth class liquor licenses was insufficient, and no valid license could be issued upon that application; that no valid license as an inn-holder could be issued to Clark before May 22, 1908, and none was so granted or issued; that for these reasons the first and fourth class liquor licenses were never valid. An innholder's license may be granted at any time during the year. . . . I rule that the authority of licensing boards to grant liquor licenses of the first and fourth classes can be exercised only in the month of April in each year. . . . I rule that the innholder's license granted to Harry A. Clark is valid; that innholders' licenses may be granted at other times than in the month of April; that all sales of intoxicating liquors made by him on the premises mentioned in the petition since May 23, 1908, have been unlawful."

A decree accordingly was entered enjoining the defendants

" from using the premises for the illegal keeping and sale of intoxicating liquor "; and the presiding judge at the request of the parties reported the case for determination by this court under the following terms: " If upon the facts found and the pleadings the rulings were right. the decree is to be entered. Otherwise the rulings and decree are to be set aside and such decree entered as justice and equity may require."

*G. A. Ham,* for the plaintiffs.

*J. F. Sweeney,* (*H. A. Wilson* with him,) for the defendants.

RUGG, J.    This is a bill in equity brought under R. L. c. 101, § 8, by ten legal voters of the town of Maynard, averring that a certain building in said town was used for the illegal keeping and selling of intoxicating liquors, and praying for its abatement as a common nuisance.    There was a hearing in the Superior Court, and the presiding judge found that the defendant Clark on March 25, 1908, made an application to the selectmen of the town of Maynard for a license as an innholder and for first and fourth class liquor licenses.    This application described the premises as a " building to be erected on lot on southerly side of Main Street corner of River Street in said Maynard in the whole of said building, cellar for stock only of such building."    At that time there was no building on the lot and none in process of erection.    Publication of notice of this application was duly made.    On April 15, 1908, the board of selectmen licensed four places for the sale of intoxicating liquors, being authorized by law to license five, and determined informally to grant a license to Clark when the building was so far completed that an innholder's license could be granted, but no formal action was taken.    On March 31, 1908, the work of digging the cellar for the building began, and on April 28, 1908, the foundations and cellar being then ready, the work of constructing the super-structure was begun and was completed on June 27, 1908.    On May 22, 1908, the building was so far completed and furnished that strangers and travellers to a limited number might be fed and lodged, although it was far short of being finished.    On May 22, 1908, the defendant Clark applied for a license as an innholder, and on that day the selectmen granted an innholder's license and a first and fourth class liquor license to do business at 34 and 36 Main Street.    The defendant Coughlin is the

owner of the building. In the Superior Court a decree was entered for the plaintiffs, on the ground that the licenses for the sale of intoxicating liquors were void.

The defendants contend that the Superior Court had no jurisdiction of the cause upon the facts found, the argument being that inasmuch as the selectmen have undertaken to grant a license and have acted in a quasi-judicial capacity, their acts can be reviewed only by certiorari. If it be assumed in their favor that the act of granting liquor licenses is a quasi-judicial one, it does not follow that the Legislature cannot provide a remedy by which such action can collaterally be brought under review. It has not infrequently been held that prerogative writs will not be issued in cases where another adequate remedy has been provided by statute. *Perry* v. *Hull,* 180 Mass. 547. *Attorney General* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 194. The language of the statute, under which the present petition is brought, is general and confers jurisdiction whenever premises are used for the illegal keeping or sale of intoxicating liquors. This language must have been intended to include, as it does by apt expression, instances of violation of law by the holder of a license as well as by unlicensed persons.

At the time the application for the licenses was filed and at the time notices were published, there was no building upon the lot of land upon which subsequently the building described in the licenses was constructed. It is plain, from the several provisions of the liquor license law, that no license can be granted to be exercised anywhere except in a building. There is no detailed statutory requirement as to the contents of the application, but R. L. c. 100, § 14, makes specific enumeration of certain matters which must be contained in the notice. By implication therefore the statute requires that the application shall at least contain all the descriptive information which must be set out in the notice, namely, " the name of the applicant in full, the class of license applied for, a particular description of the premises on which the license is to be exercised, designating the building or part of a building to be used, and, if practicable, the street and number." It was said in *Braconier* v. *Packard,* 136 Mass. 50, at page 53, that " the object of the provision is to

give full information to the public of the person who applies, and of the place where the license is to be exercised, so that any citizen may object to the granting of the license." A building cannot be intelligently and certainly designated to the general public until it exists as a physical structure. This purpose of the statute cannot be executed without an actual edifice in existence. All the material conditions for the legal exercise of the license if granted must be in real and corporeal existence at the time the application is filed. The proceeding for the procurement of the license is prematurely instituted, unless these essential prerequisites are in being. One pertinent ground for objection to the granting of a first-class innholder's license for the sale of intoxicating liquors well might be that the building was ill adapted for uses as an inn, and that it was described as such solely as a cover for the purpose of securing the larger privileges as to the sale of liquor which accompany a license of that sort. Unless the building is on the face of the earth the public at large would have no information upon this matter. Another objection might be that the building was within the prohibited distance from a schoolhouse. In conceivable instances this might depend upon measurements of some nicety, which could only be made respecting a genuine building, and not one resting only on the imagination. Whether the provisions of law respecting screens, shutters, stained glass windows, use as dwelling house or communication with a dwelling house, (R. L. c. 100, §§ 35, 36, 37, and § 34 as amended by St. 1906, c. 374,) have been complied with can only be within the possible knowledge of any of the interested and objecting public as to an existing building. While the maintenance of a public bar was prohibited (Pub. St. c. 100, § 9, cl. 5; St. 1891, c. 369), whether there was this illegal appointment could be determined only of an actual construction. The right of an adjoining owner to object to the granting of certain classes of licenses, dependent as it is upon proximity in linear distance to the " premises described in the application," contemplates the physical description of an existing structure in the application and notice. R. L. c. 100, § 15. The requirements of R. L. c. 102, § 6, point to the same conclusion. It is plain, therefore, that the application must describe an actual building, and that such a structure

must be set forth in the notice. It follows that this application did not conform to the statute, and no valid license could be granted upon it.

It remains to inquire, however, whether this difficulty in the procedure went to the jurisdiction of the selectmen in granting the license or whether the paper when granted remained in force until revoked in one of the ways pointed out in the statute.

The difficulty with the defendant Clark is that the irregularity in the granting of the license began with his own unwarranted act in describing in his application a building not then in existence. His application, which was his own act, showed on its face that no legal license could be granted upon it. It is the general rule that a public board, when acting under authority conferred by statute in issuing licenses, must conform to the provisions of the statute, and if they fail to exercise their authority pursuant to its terms the licensee is not protected. This was laid down in an early case respecting the license of an auctioneer. *Clark* v. *Cushman*, 5 Mass. 505. In other jurisdictions it has been frequently held that the requirement of a notice as a prerequisite to the granting of a license is jurisdictional, and that a failure to comply or defective compliance with this requirement is not a mere irregularity in the proceedings, but one which renders them wholly void and the license of no protection. *Pisar* v. *State*, 56 Neb. 455. *Brown* v. *Murphy*, 22 Vroom, 250. *People* v. *Davis*, 36 N. Y. 77. *Russell* v. *State*, 77 Ala. 89. *Lombard* v. *Cheever*, 8 Ill. 469. *State* v. *Moore*, 1 Jones, 276. *House* v. *State*, 41 Miss. 737. It has been repeatedly held in cases arising under our liquor laws that a license granted in violation of some provision of the license law was illegal, and although unrevoked, afforded no protection against criminal proceedings for acts, which would not be contrary to the statute, if the license was of any validity. For instance, licenses to be exercised in buildings within four hundred feet of a schoolhouse, although regular in form, have been held to be no justification to the holder; *Commonwealth* v. *Whalen*, 134 Mass. 206; *Commonwealth* v. *Jones*, 142 Mass. 573; *Commonwealth* v. *McDonald*, 160 Mass. 528. So also a license issued in excess of the number permitted by law; *Commonwealth* v.

*Hayes*, 149 Mass. 32; or to be exercised in a building used in part as a dwelling house, *Commonwealth* v. *McCormick*, 150 Mass. 270; and one which fails to specify the rooms, *Commonwealth* v. *Cauley*, 150 Mass. 272, or to describe the building, *Commonwealth* v. *Merriam*, 136 Mass. 433, and one authorizing sales of a kind of liquor beyond the power of the board to grant, *Commonwealth* v. *Markoe*, 17 Pick. 465.

The defendants rely upon certain expressions used by the court in *McGinnis* v. *Medway*, 176 Mass. 67. That was an action to recover money paid for a license, which was subsequently revoked on the ground that the selectmen in posting the notices of the application required by the statute failed to do their duty in that they posted upon the adjoining property instead of the estate described in the application. It was there said respecting the licenses that " they were a full and legal protection to the licensee until revoked under the statute, and they could not be so revoked for the cause for which they were actually revoked, except by a court acting in proceedings instituted directly for that purpose under the provisions of the sixth section of the statute." R. L. c. 100, § 14. This language was used in a different kind of a case with another purpose, and cannot be held to apply to such a case as the present where in the very first step toward the granting of the license, which was necessarily taken by the defendant Clark and not by any public authority, it appeared upon the face of his paper that no valid license could be granted. An examination of the records of the selectmen, which must include at least the application, the notice and a copy of the license, shows that the attempted issuing of the licenses was void, because of the fatal defect in the application and notice as well as in the variance between the description of the building contained in these papers and in the license issued, where it was referred to by its street numbers.*

---

* The application described the premises for which the licenses were desired as a " building to be erected on lot on the southerly side of Main Street in said Maynard in whole of said building, cellar for stock only of such building." The innholder's license allowed Clark to be an innholder " at 34 and 36 Main Street in " Maynard; the first class liquor license was to Clark, " doing business at No. 34 and 36 on the southerly side of Main Street as

It is contended strongly by the plaintiffs that the licenses were void also, on the ground that the selectmen had no authority to issue any, either as innholder or for the sale of liquor except in the month of April, those here in question having been issued in May. This argument is deduced from the terms and history of R. L. c. 100, § 12, which provides that the licensing board "may, during March and April receive applications for such licenses, publish, investigate and act thereon, and may, in April, grant such licenses, to take effect on the first day of May following," and from the R. L. c. 102, § 4, which provides as to innholders' licenses that "they may be granted during April, to take effect on the first day of May next ensuing." It is urged respecting the latter statute that, tracing its history to St. 1878, c. 241, § 9, there was express authority for granting the license after as well as before the first of April, and that when the Pub. Sts. were enacted, it was provided in c. 102, § 4, that the express authority to issue such licenses after the given date was omitted. Prior to St. 1883, c. 93, there was no statute as to the time when liquor licenses should be issued, although it was provided that they should all expire on the first day of May next ensuing. Pub. Sts. c. 100, § 5. Under the statute as it then stood the only time when a license could be issued to continue in force an entire year was on the first day of May. This was changed by St. 1883, c. 93 (R. L. c. 100, § 12), so as to make it possible to issue a license in April to take effect on the first day of May following for a term of one year. But that statute was permissive and not mandatory, nor even directory in terms. As to a statute imperative in phrase, it has often been held that where it relates only to the time of performance of a duty by a public officer and does not go to the essence of the thing to be done, it is only a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done. A statute that " the assessors shall assess . . . in thirty days " after the certification to them of the amount to be assessed has been held merely directory and not to invalidate a tax assessed after the expiration of such time. *Pond* v. *Negus,*

Innholders, in whole of said building stock in cellar "; the fourth class license was to Clark " doing business at No. 34 and 36 on the southerly side of Main Street in whole of said building, stock in cellar."

3 Mass. 230. *Williams* v. *School District*, 21 Pick. 75, 82. In *Torrey* v. *Millbury*, 21 Pick. 64, the assessors failed to keep their lists of valuations and assessments in the form prescribed by statute, and it was objected that the tax was invalid. It was said by Chief Justice Shaw, " Many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which, does in no respect affect the rights of taxpaying citizens. These may be considered directory; officers may be liable to legal animadversion, perhaps to punishment, for not observing them; but yet their observance is not a condition precedent to the validity of the tax." The same has been held respecting provisions as to accounts of expenses to be included in a special assessment, *Lowell* v. *Hadley*, 8 Met. 180, 195; and as to the time when a public officer should be elected, *Russell* v. *Wellington*, 157 Mass. 100, 105; and as to strict compliance with some apparently mandatory provisions of the election law, *O'Connell* v. *Mathews*, 177 Mass. 518; *Wheeler* v. *Carter*, 180 Mass. 382–387; *Commonwealth* v. *Rogers*, 181 Mass. 184, 191. See *Suburban Light & Power Co.* v. *Aldermen of Boston*, 153 Mass. 200, where "shall" in a statute as to duties of public officers was construed to mean "may." See also *Phillips* v. *Fadden*, 125 Mass. 198; *Clemens Electrical Manuf. Co.* v. *Walton*, 168 Mass. 304; *Shelton* v. *Sears*, 187 Mass. 455; *Corcoran* v. *Aldermen of Cambridge*, 199 Mass. 5.

There are many cases in other jurisdictions where language apparently imperative in form has been held to have been intended only as directory, and failure to comply with the provision has been held not to affect the validity of the act done. *French* v. *Edwards*, 13 Wall. 506. *Hehl* v. *Guion*, 155 Mo. 76. *Albright* v. *Sussex Co. Lake & Park Commission*, 39 Vroom, 523, 534. *State* v. *Lean*, 9 Wis. 279, 292. *In re Hennessy*, 164 N. Y. 393. *People* v. *Allen*, 6 Wend. 486. *People* v. *Cook*, 8 N. Y. 67. See cases collected 2 Sutherland, Stat. Cons., pp. 1117 and 1118, and Cooley, Const. Lim. (7th ed.), pp. 111 to 113. But here we are dealing with language which is only permissive in form. It permitted the granting of licenses to be done aforetime after deliberation and investigation instead of under pressure to hurry

naturally exerted by all applicants and their friends which existed under the earlier law. It cannot be argued successfully that there is any public exigency which demands the granting of all licenses as innholders or liquor sellers so that they shall run for an entire year rather than a less time, if the official board think public interests best may be subserved by granting at a date so late as to run for a less period and the licensee is willing to accept these terms. Moreover, it is conceivable that not infrequently instances may arise by reason of fire, construction of new inns or other buildings, where a sound judgment would require a delay in granting one or more licenses until a later time than April.

It seems plain, therefore, that there is authority to grant such licenses in months other than April. It is to be noted that this court has in two cases since St. 1883, c. 93, without discussion of the question here raised, ordered a peremptory writ of mandamus to issue requiring the signing of licenses where the vote by the public board was later than April. *Braconier* v. *Packard*, 136 Mass. 50. *Fitzgerald* v. *Hurley*, 180 Mass. 151.

The ruling of the judge that the applications filed in March were insufficient and the licenses issued thereon void was right, as was also the ruling that the innholder's license issued on May 22 was valid, but his ruling that no license for the sale of intoxicating liquor could be granted except in the month of April was wrong. This error, however, does not affect the validity of the decree entered. Under the terms of the report, if the rulings were not correct the decree is to be set aside. We construe this to mean incorrect in respects affecting the form or substance of the decree. Let the entry be

*Decree affirmed.*