Merrimack, }
Dec. 7, 1909. }

ATTORNEY-GENERAL (*ex rel.* WEST) *v.* BARTLETT & a.

The statute relating to the manner of conducting elections (Laws 1897, c. 78) contains no provision prohibiting a voter from placing a distinguishing mark upon his ballot, or subjecting him to a penalty for so doing, or authorizing the rejection of a ballot so marked.

Where the only mark upon a ballot cast at a biennial election is a cross above a party column, but below and a little to the left of the circle at the head of the column, the method pursued by the voter is a substantial compliance with the requirements of the statute, and his intention to vote for all the candidates in the column is unmistakable.

INFORMATION, in the nature of *quo warranto*, to determine the title to the offices of second and third supervisors of the check-list of the town of Chichester. Trial by the court. Facts found, and case transferred from the April term, 1909, of the superior court, by *Stone*, J.

At the election held in Chichester, November 3, 1908, the moderator declared a tie vote and no choice for second and third supervisors. At an adjourned meeting held the following day, the defendants received a majority of all the votes cast, and were declared elected. They qualified and entered upon the performance of their duties.

The ballot described in the opinion was cast at the election held November 3, and was counted as a vote for the defendants. If material, it was found that it was the intention of the voter to vote for the defendants, on the evidence of the ballot itself. To this finding the relator excepted. If the ballot should have been counted for the defendants, there was no choice for second and third supervisors on November 3, the defendants were legally elected at the adjourned meeting, and this action should be dismissed. If the ballot should not have been so counted, the relator

and one Leavitt received a majority of all the votes cast at the election held November 3 and should have been declared elected, and there should be judgment of ouster against the defendants.

*Niles & Upton*, for the relator.

*Martin & Howe*, for the defendants.

BINGHAM, J.    This case presents the question whether a ballot marked with a cross above the party column in which the defendants' names appear as candidates, but below and a little to the left of the circle at the head of the column, should be counted for the defendants.    The relator's position is (1) that the cross in the position it occupies upon the ballot is a distinguishing mark and renders the ballot a nullity, and (2) that the voter's intention is not legally expressed, if he intended to vote for the defendants.

In support of his first position, the relator calls attention to the clause in section 10, chapter 78, Laws 1897, which says "the ballots shall be printed on plain white paper, in weight not less than that of ordinary printing paper, and there shall be no impression or mark to distinguish one ballot from another," and to the provisions of the act generally in so far as they indicate a purpose to preserve the secrecy of the ballot.    An examination of section 10 discloses that the reference there made to distinguishing marks is but one of the several directions contained in that section of the statute governing the conduct of the secretary of state in the preparation of ballots, and has nothing whatever to do with the voter in marking his ballot.    In fact the act of 1897 contains no provision prohibiting a voter from placing a distinguishing mark upon his ballot, or subjecting him to fine or imprisonment for so doing, or authorizing the election officers or the court to reject a ballot so marked.    It is true that in section 29, chapter 33, Public Statutes (Laws 1891, *c.* 49, *s.* 29), it was provided that "a voter who shall  .  .  .  place any distinguishing mark upon his ballot, or shall write any name as the candidate of his choice, with the intention of placing thereby a distinguishing mark upon his ballot,  .  .  .  shall be punished by a fine of not more than five hundred dollars"; but section 29, as well as all the other provisions of chapter 33 of the Public Statutes, was repealed by section 21, chapter 78, Laws 1897, and no provision of a like nature was incorporated in the latter act.    Indeed, the act seems to contain few, if any, safeguards looking to the secrecy of the ballot after the votes have been cast and the time has arrived for making the count.    Our conclusion is that it cannot be implied from any particular provision, or from the act taken as a whole, that it

was intended that a ballot with a distinguishing mark upon it should be treated as a nullity and not counted.

Moreover, it does not seem to us that a mark of the character of the one in question, and placed upon a ballot as this was, could be regarded as a distinguishing mark, subjecting the voter to punishment under section 29, even if that section had not been repealed, or had been embodied in the present statute. The mark did not differ in character from that prescribed in the statute to be used by a voter in preparing his ballot, and the place where it was put upon the ballot—at the head of the party column—was not such a departure from the requirements of the statute as not to be a substantial compliance therewith. The provisions of the act wherein it says that a voter may prepare his ballot by placing a cross in the circle at the head of the column bearing the name or designation of his party, or in the square opposite the name of the candidate of his choice, are not mandatory. Prior to the enactment of our present ballot law, it was held in this state that a statute regulating the manner of voting and providing that " all ballots that shall hereafter be given in at any election of town, state, or county officers shall have written or printed upon them the full Christian and surname of the person voted for: Provided, that the middle name . . . may be indicated by the initial letter," was directory; and that if the intention of the voter could be fairly determined, effect should be given to it and the vote counted accordingly. *Attorney-General* v. *Colburn*, 62 N. H., 70, 71, 74. This rule of construction is recognized and continued in section 18, chapter 78, Laws 1897, where it says that "if, for any reason, a disagreement occurs among those present at the counting of the ballots, as provided in this act, as to the voter's choice for any office to be filled, and a majority of those so present shall decide that it is impossible to determine the voter's choice for that office, his ballot shall be regarded as defective therein, and shall not be counted with reference to that office." If the framers of this law intended that a ballot marked with a cross outside the circle but above and in line with the party column, or outside the square but opposite the space containing the name of the candidate of the voter's choice, should be rejected as a nullity, it is difficult to understand why it was provided in section 18, that a ballot should be regarded as defective and not counted only when it was " impossible " for the election officers to determine the voter's choice.

In Massachusetts, the court in construing their ballot law (R. L., *c.* 11, *ss.* 225–238), from which many of the provisions of our statute were undoubtedly taken, have held that the provisions relating to the manner in which the voter shall mark his ballot

are directory.    *O'Connell* v. *Matthews*, 177 Mass. 518, 521; *Flanders* v. *Roberts*, 182 Mass. 524; *Brewster* v. *Sherman*, 195 Mass. 222; *Cheney* v. *Coughlin*, 201 Mass. 204, 212.    Whether the conclusion reached in the last case on the question of the voter's intention was correct, it is unnecessary for us to consider.    In the present case we are satisfied that the method pursued by the voter in marking his ballot was a substantial compliance with the requirements of the law, and that his intention to vote for all the candidates in the party column is unmistakable.

*Petition dismissed.*

All concurred.