Belknap,
Jan. 3, 1911.

ATTORNEY-GENERAL (*ex rel.* LANG) *v.* DUNCAN.

Where a voter at an election conducted under chapter 78, Laws 1897, indicates his preference by pasting over a name in the left-hand column of the official ballot a printed slip bearing the name of the candidate of his choice, the method employed is not a compliance with the statute, and the ballot so prepared cannot be counted for that office.

A town which has adopted the provisions of chapter 33, Public Statutes, for its annual elections is bound to conduct them in accordance with subsequent amendments to that act.

The authority previously given to towns to adopt the secret ballot law at their annual elections was not abrogated by the repealing clause of chapter 78, Laws 1897.

QUO WARRANTO. At the annual town-meeting in Alton, in March, 1910, the moderator refused to count certain ballots claimed to have been cast for the relator for the office of third selectman, and declared the defendant, who is now in possession of the office, elected. Upon the report of a master appointed to canvass the ballots, the court (*Chamberlin*, J.) made sundry rulings as to the count of the ballots; and finding upon such rulings that the relator received eighty-three votes and the defendant eighty-one, held there should be a decree of ouster. To the rulings and decree the defendant excepted. The case was transferred from the March term, 1910, of the superior court, upon the stipulation that if the defendant was elected upon a correct count of the ballots, the proceeding should be dismissed.

January 14, 1893, Alton adopted the provisions of chapter 33,

Public Statutes, and the annual elections have ever since been held under the Australian or secret ballot law. Only a single nomination for each office was printed upon the official ballot for the meeting in question. These, including the defendant's name as candidate for third selectman, were.printed in a perpendicular column at the left of the ballot under a circle. The ballot also contained a similar column at the right, in which were printed the designations of the officers to be voted for, with as many blank lines under.each designation as there were persons to be elected to such office. The relator's name was not printed upon the ballot.

There were sixty-eight ballots with a cross in the circle above the column in which the defendant's name was printed. There were sixty-one ballots in which a strip of paper, upon which the relator's name was printed, had been pasted over the defendant's name and a cross marked in the circle above the column. The only exception considered is to the ruling of the court that the ballots last mentioned should be counted for the relator.

*Shannon & Tilton* (*Mr. Tilton* orally), for the relator.

*Stephen S. Jewett* (by brief and orally), for the defendant.

WALKER, J. It is claimed by the relator that the ballots, sixty-one in number, on which his name printed upon a narrow strip of paper was pasted over the defendant's name, which appeared on the ballots as they were originally prepared, should be counted for him. It is apparent from the case that if his contention in this respect is not sustained he was not elected, and other questions relating to the marking of ballots need not be considered. The election was in fact conducted under the provisions of chapter 78, Laws of 1897; at least, an attempt was made to comply with the provisions of that act in the method of preparing and distributing the ballots and in conducting the election. For the guidance of those voters who did not wish to vote for the defendant, the only candidate for third selectman printed on the official ballot, the statute in section 17 provides: "In case a voter desires to vote for a candidate whose name is not printed under the circle in which he has marked, he shall erase or cancel the name of the candidate in such column for whom he refuses to vote, and may vote for the candidate of his choice by marking a cross (X) in the square opposite the name of such candidate, or by writing in the name of the person

for whom he desires to vote in the right-hand column prepared for the purpose. In such case the vote so marked in the square, or so inserted in the right-hand column, shall be counted, and such ballot shall not be counted for the candidate for the same office whose name is erased. . . . Provided, however, that a voter may omit to mark in any circle, and may vote for one or more candidates by marking a cross (X) in the square opposite the names, or he may insert the names of the candidates of his choice in the blank or right-hand column, and such votes shall be counted." The legislature has thus pointed out in unambiguous language a reasonable method for a voter to pursue in marking his ballot, when he desires to vote for a person whose name is not on the ballot handed to him by the election officers. The "blank or right-hand column" is expressly provided for that purpose, after the voter has erased or cancelled the name of the candidate for whom he does not wish to vote under the circle which he has marked with a cross. It is the method prescribed by which the voter may express his intention in this respect and by which his vote "shall be counted."

While there may be little doubt that the voters who pasted the name of the relator over that of the defendant thereby expressed a decided preference for the former for the office of selectman, if the way they adopted of indicating that preference is not a substantial compliance with the way prescribed by the statute, their attempt to vote for the relator is a failure. *Attorney-General* v. *Bartlett,* 75 N. H. 388. The voter must furnish the kind of evidence of his intention which the statute requires, in order to have his vote counted. He must at least show that he attempted to comply with the statute, or that he thought he had done so. But in this case the inference is irresistible that the voters did not try to observe the statutory method of voting for third selectman. Instead of "writing in" or "inserting" the name of their candidate in "the right-hand column prepared for the purpose," they put printed stickers over the defendant's name in the left-hand column, which was not prepared for that purpose. Even if it should be conceded that a sticker might be legitimately used in the right-hand column, it is clear that its use over a candidate's name in the left-hand column, for the purpose of showing the voter's purpose to vote for some other candidate, cannot be regarded as a substantial compliance with the statute, or even as an attempt to comply with it. To hold otherwise would be equivalent to saying that the voter might write or insert the name of his choice on any part of the ballot, with a written

designation of the office intended. The sixty-one votes in question cannot be counted for the relator, and the exception must be sustained. This result makes it unnecessary to consider whether the defendant's name was "cancelled" by pasting the sticker over it, since if such votes are not counted for him he is still elected.

In argument the plaintiff claims that chapter 78, Laws of 1897, is not in force in Alton. Chapter 49, Laws 1891, was incorporated as chapter 33 in the Public Statutes. These chapters were directed to the conduct of biennial state elections, but provided that any town might adopt their provisions for its annual elections. P. S., c. 33, s. 1. The town of Alton adopted the provisions of chapter 33 of the Public Statutes for its annual elections, January 14, 1893, and, as appears, acted under that chapter at the election last March. The relator's claim is, that by the repeal of chapter 33, Public Statutes, contained in the law of 1897 (c. 78, s. 21), the adoption of the act by Alton in 1893 was rendered void, and the annual elections could thereafter be legally conducted only in the method lawful where the special provisions are not in force. If this were so, and the election invalid for that reason, it might be that no one was elected, because no lawful election had been held.

But the act of 1897 is entitled "An act in amendment of the Public Statutes, relating to the manner of conducting caucuses and elections." Chapter 33, Public Statutes, which relates to the "manner of conducting caucuses and elections," embodies what is popularly known as the Australian system of elections; and the act of 1897 is framed on the same general principle, which is to promote or secure secrecy in voting at the biennial elections. Except in some of the details of procedure, the two acts are not materially different. The general object sought is the same in both. In the former, the privilege was granted to towns of adopting the provisions of the act for their annual elections; and the town of Alton availed itself of that privilege in 1893, and since then has conducted its elections in accordance with the existing statutes relating to the Australian system of voting. If section 21, chapter 78, Laws of 1897, had not in terms repealed "chapter 33 of the Public Statutes," but only "all acts and parts of acts inconsistent with this act," it could be argued with great force that the former act was merely an amendment to the latter, since the subject-matter and general purposes of both acts are the same. The grant to towns of the privilege of voting under the amended act at their annual elections would be deemed a reënactment of the former provision on that subject, and

not an implied repeal thereof. By adopting the provisions of chapter 33, Public Statutes, the town of Alton became bound to observe and conduct its elections in accordance with subsequent amendments to that chapter. Towns were granted the option of electing their local officers under the general secret ballot law as it might thereafter exist; they were given no option or legislative power to reject any provisions of the statute as then existing, or as it might thereafter exist; they were merely given the option of adopting the system as it appeared in chapter 33, Public Statutes, the details of which the legislature had the undoubted right to amend and improve.

But it is argued that the legislature of 1897 expressly repealed chapter 33; that the town was then obliged to hold its local elections under the general law applicable to towns that had never adopted the Australian law; and that under that law the relator was elected. Although the language of the repealing clause is broad enough to have that effect, it does not follow that the legislature intended thereby to terminate the right which many towns had acquired of holding local elections under the general election law. If a legislative intention can be legitimately found that the repealing clause should not apply to the section authorizing towns to adopt chapter 33, it is not the province of the court to disregard the intention in order to apply the literal language of the statute. A somewhat similar question arose in *Smith* v. *People,* 47 N. Y. 330, and it was held that the act nominally repealed was not repealed in all its parts, because the legislature could not reasonably have had such an intention. The court say (*p.* 338): "The question whether a repeal of a prior statute, absolute in terms, can be limited in its operation and effect for any reason has frequently arisen; and the decisions of the courts have been uniform, that while the language of the repealing clause must be accepted as the expression of the will of the legislature, and effect given to it according to its terms, unless it appears, although the language of the appeal [repeal] was general and unqualified, that it was intended to be used in a qualified or limited sense; that whenever that intent is discovered effect must be given to it, as in the interpretation of other acts."

In *State* v. *Vernon County,* 53 Mo. 128, a similar result was reached, and it is there said (*p.* 131): "The act of 1873 is really nothing more than a revision of the act of 1872. Some of the provisions in the two acts are identical, and they all relate to the same subject-matter. The purpose of the latter enactment was to remedy de-

fects that were supposed to exist in the former. The subsequent law was not designed to interrupt the continuity of the first act, so as to avoid or annul proceedings commenced under it," although there was an express repeal.

It is not probable that the legislature of 1897, in changing and perfecting the system of elections by the enactment of chapter 78, intended to abrogate the authority previously given to towns to adopt the secret ballot law, and to grant new authority to the towns that had taken advantage of the former act to enjoy the benefit of the latter. Many towns had adopted chapter 33, Public Statutes, and thus signified their willingness to conform in their elections to the new system of voting as it then existed and as it might be modified by amendment. It is hardly conceivable that the legislature, who were in effect amending chapter 33, should intend to repeal the authority of all those towns and reinvest them, in common with all other towns, with authority to adopt the amended act. Such a result would impute to the legislature a frivolous purpose, in view of the fact that the act also authorized towns to rescind their previous adoption (s. 8). Moreover, the practical contemporaneous construction of the powers of towns since 1897 which had before adopted chapter 33 is evidence of some weight upon this question. It was not understood that a readoption was made necessary by the new act, and many town elections have been held since 1897 in reliance upon this understanding. As there is no substantial reason apparent why the repealing clause should be given its broadest meaning, and as there are reasons why it is not probable the legislature intended it should have that effect in the amendatory statute of 1897, the necessary conclusion is that that statute did not render void the authority of Alton to hold its election last March under the secret ballot law.

The exception to the counting of the sixty-one ballots for the relator is sustained, and the order is,

*Petition dismissed.*

BINGHAM, J., concurred.

PARSONS, C. J. The substantial feature of the legislation of 1891 and 1897, or secret ballot law, is the substitution of an official ballot for the privately prepared ballots previously in use. When it was provided that none but the official ballot should be allowed to be deposited in the ballot box, and that no ballots but those provided in accordance with the provisions of the act should be

counted (Laws 1897, c. 78, s. 18), it seems reasonably clear that it was intended to prohibit the use of a paper privately prepared outside the voting compartment, as the whole or any part of a ballot; in short, that the use of stickers or pasters was prohibited as clearly as it could be without the use of those terms. *Roberts* v. *Quest*, 173 Ill. 427. Without intending to question the weight of the reasoning relied upon in Judge *Walker's* opinion, I prefer to place my concurrence in the result upon the ground that the statute prohibits the use of stickers and directs that they shall not be counted if used, rather than upon the ground that the relator's name was by the voter put upon the left-hand instead of on the right-hand side of the ballot. In this view *Young*, J., concurs.

PEASLEE, J., concurred upon both grounds.