BUSHWAY–WHITING ICE CREAM COMPANY & others *vs.* MAYOR OF SOMERVILLE & others.

Middlesex. November 4, 1940. — January 27, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*License. Motive. Public Officers. Pleading, Civil,* Petition. *Mandamus.*

Averments in a petition for a writ of mandamus that a license to carry on in a city the business of slaughtering and rendering "was issued at a meeting of the board of aldermen which was neither called nor

conducted in accordance with the legal requirements pertaining thereto," following an averment that the application for the license was considered by the board "at a special meeting . . . which your petitioners are informed and believe and therefore aver was hurriedly called together without adequate or proper notice having been given of said meeting," were adjudged on demurrer to set forth legal conclusions only and not facts which would warrant maintenance of the petition.

Motives of members of a board of aldermen in considering and granting a license under G. L. (Ter. Ed.) c. 94, §§ 118, 119, are not the subject of judicial inquiry.

Under G. L. (Ter. Ed.) c. 94, §§ 118, 119, a license to carry on the business of slaughtering and rendering might properly be granted although the application therefor was not accompanied by any plan and merely set forth that the license was sought for a proposed "two-story brick and concrete building" of a stated area and at a designated location.

PETITION, filed in the Superior Court on December 28, 1939.

Averments of the petition were that the application in question respected premises "situated on the westerly side of Water Street in the city of Somerville"; that it "was not accompanied by any plan of existing building or building to be erected on said premises; but contained only the following description of the proposed structure: 'A two-story brick and concrete building. Said property adjoins the Standard Charcoal Company and consists of approximately 26,777 feet'"; that it "was considered" and granted "by the respondent board of aldermen at a special meeting of said board which your petitioners are informed and believe and therefore aver was hurriedly called together without adequate or proper notice having been given of said meeting." Additional averments are described in the opinion.

A demurrer was sustained by *Good, J.*

*H. W. Cole*, for the petitioners.

*R. J. Muldoon*, for the respondents.

*C. J. Muldoon*, by leave of court, submitted a brief as *amicus curiae.*

LUMMUS, J. This is a petition for a writ of mandamus, brought by owners and occupants of land in Somerville near a location at which the respondent aldermen of Somerville, on November 20, 1939, issued to the Brighton Dressed

Beef and Veal Company a license to carry on a business of slaughtering and rendering in a building not yet erected. The prayer is for a writ of mandamus commanding the revocation of the license. The answer of the respondents included a demurrer, one of the grounds for which was the alleged failure of the petition to state facts calling for the relief asked. *Finlay* v. *Boston*, 196 Mass. 267, 269. *Wesalo* v. *Commissioner of Insurance*, 299 Mass. 495. The judge in the Superior Court sustained the demurrer on that ground, and ordered the petition dismissed. The petitioners appealed under G. L. (Ter. Ed.) c. 231, § 96.

The first question is, Under what statute was the license in question granted? G. L. (Ter. Ed.) c. 111, § 151, which originated in St. 1871, c. 167 (compare Gen. Sts. [1860] c. 26, § 52; G. L. [Ter. Ed.] c. 111, § 143; St. 1933, c. 269, § 2; *Cambridge* v. *Trelegan*, 181 Mass. 565; *Revere* v. *Riceman*, 280 Mass. 76) requires a license, spoken of as "written consent and permission," before one may "occupy or use a building for carrying on the business of slaughtering . . . or for other noxious or offensive trade and occupation." The licensing authority is "the mayor and city council," or "the selectmen," or in towns having a population of more than five thousand, "the board of health." The constitutionality of this statute was settled by *Watertown* v. *Mayo*, 109 Mass. 315.

G. L. (Ter. Ed.) c. 94, §§ 118, 119, originated in St. 1894, c. 491, entitled "An Act to codify and consolidate the laws relating to contagious diseases among domestic animals." The original act provided for local inspectors of animals and provisions, and for an inspection of the carcasses of all slaughtered animals. § 10. Sections 17 and 18 of the original act are comparable to the present G. L. (Ter. Ed.) c. 94, §§ 118, 119. The latter sections require a license, not to occupy or use a building for slaughtering, but "to carry on the business of slaughtering." The license is not unlimited in time, but is an annual license applied for in April and continuing in force only until May first of the year next ensuing. The licensing authority is not precisely the same as under the statute discussed in the pre-

ceding paragraph. The "aldermen," and not "the mayor and city council," constitute the licensing authority in cities. Besides, the aldermen may designate other officers as the licensing authority. See also G. L. (Ter. Ed.) c. 111, § 154; St. 1934, c. 340, § 9.

The allegations of the petition show that the license in question was granted under G. L. (Ter. Ed.) c. 94, §§ 118, 119, rather than under c. 111, § 151. The application was for a license "to carry on the business of slaughtering and rendering." The application was written upon a printed form which bore a legend relating to c. 94, § 118, and it contained statements required by that section as to the estimated number of animals a week to be slaughtered. The license granted was "to carry on a business of slaughtering and rendering." The application was filed with, and the license was granted by, the board of aldermen. These indications are not overcome by the reference in the petition to c. 111, § 151, in connection with an unsound contention that action by a board of health in a city is necessary to action under that section. *Revere* v. *Riceman*, 280 Mass. 76, 80.

Since the license was granted under G. L. (Ter. Ed.) c. 94, §§ 118, 119, it expired on May 1, 1940, six months before the case was argued in this court. But it was conceded at the argument that a new renewal license was granted to take effect on May 1, 1940, and this new license will not expire until May 1, 1941. The new license is open to all the objections to which the earlier one was open. There is nothing in the objection that "the said license or permit was issued at a meeting of the board of aldermen which was neither called nor conducted in accordance with the legal requirements pertaining thereto; and that said license or permit was issued without proper consideration by the said board of aldermen and the issuance thereof was based upon considerations not relating to the merits thereof." That objection sets forth legal conclusions rather than facts. *Wesalo* v. *Commissioner of Insurance*, 299 Mass. 495, 498. *Hitchcock* v. *Examiners for Hampshire County*, 301 Mass. 170, 171, 172. For all that appears, all

the aldermen were present and waived notice. Their motives in voting to grant the license are not the subject of judicial inquiry. *Downey* v. *School Committee of Lowell*, 305 Mass. 329. *Gibney* v. *Mayor of Fall River*, 306 Mass. 561. Compare *Garvey* v. *Lowell*, 199 Mass. 47; *Williams* v. *New Bedford*, 303 Mass. 213, 215, 216.

The main objection to the validity of the license is that the application did not contain and was not accompanied by any plan or complete description of the proposed building in which the business was to be carried on, but the proposed building was described in the application only as "a two-story brick and concrete building." In *Cheney* v. *Coughlin*, 201 Mass. 204, a license was granted to sell liquor at 34 and 36 Main Street. The statute (R. L. [1902] c. 100, § 14) required in effect that the application for a license set out "a particular description of the premises on which the license is to be exercised, designating the building or part of a building to be used." It was held that a license could not be granted for a building not then built. In *Jaffarian* v. *Building Commissioner of Somerville*, 275 Mass. 267, a petition to require the respondent to issue a permit for the erection of a building to be used in connection with a miniature golf course, was held properly dismissed where no description of the size, material or construction of the proposed building was set out in the record. The case involved a license to build, not a license to do business. But it was said in the opinion, "The granting of the license to conduct the public amusement well might depend upon the nature of construction, the equipment and the safeguards of the building in which it is proposed to conduct the amusement" (pages 271, 272). See also *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492, 493; *Boston* v. *White Fuel Corp.* 294 Mass. 258. The statute here in question (G. L. [Ter. Ed.] c. 94, § 118) makes no express requirement of the sort except that "the location of the slaughter house or establishment" shall be stated in the application for a license. Very likely the licensing board may require plans and specifications to satisfy itself as to the character of the building or proposed building in which

the business is to be conducted. For all that appears, the aldermen in the present case saw detailed plans and specifications of the proposed building. But we find nothing in the statute that in terms or by reasonable intendment prevents the granting of a license upon such an application as was made in this case.

It is argued by the respondents that the questions in this case became moot upon the expiration of the original license on May 1, 1940 (*Swampscott* v. *Knowlton Arms, Inc.* 272 Mass. 475; *Jaffarian* v. *Mayor of Somerville,* 275 Mass. 264) notwithstanding the fact that the same questions without any interruption rose again upon the issuance of a wholly similar renewal license which will not expire until May 1, 1941. A point of practice, too, is open upon the record. Neither of these points is wholly free from difficulty. Since the order that the petition be dismissed was right on its merits, and the practical result to the petitioners must be the same whether the two points just mentioned are dealt with or not, we do not consider them, but affirm the order sustaining the demurrer and ordering the petition dismissed. *Calligaris's Case,* 292 Mass. 397. *Weston* v. *Fuller,* 297 Mass. 545, 547. *Cambridge* v. *West Springfield,* 303 Mass. 63, 69, 70. *Dolan* v. *Commonwealth,* 304 Mass. 325, 342.

*So ordered.*