JOSEPH E. DONOVAN, JUNIOR, *vs.* EASTERN RACING
ASSOCIATION, INC.
(and four companion cases [1]).

Suffolk.   Bristol.   February 9, 10, 1949. — June 9, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Wager.   Racing.   Pleading, Civil,* Demurrer.

"Daily double" betting conducted at licensed horse or dog racing meet-
ings, whereby patrons bet on particular horses or dogs to win both of
two successive races, is a part of the pari-mutuel system of betting
legalized by G. L. (Ter. Ed.) c. 128A, § 5, as amended, and is not
gaming within G. L. (Ter. Ed.) c. 137, §§ 1, 2.

A demurrer to a declaration did not admit the truth of an allegation of
law therein that the "daily double" system of betting at horse or
dog racing meetings "was not the pari-mutuel system of wagering."

The mere fact that a licensee conducting a horse or dog racing meeting
fails to comply with the requirements of G. L. (Ter. Ed.) c. 128A, § 5,
as amended by St. 1935, c. 454, § 1, respecting use of "automatic
betting machines" and a "totalisator machine" at the betting place
at such meeting does not deprive the betting there of its standing as
legalized pari-mutuel betting nor make it gaming within G. L. (Ter.
Ed.) c. 137, §§ 1, 2.

FIVE ACTIONS OF TORT.   Writs dated June 22, 1948, in
the First District Court of Bristol in the action against
Taunton Greyhound Association, Inc., and in the Munici-
pal Court of the City of Boston in the other four actions.

Upon removal of the actions to the Superior Court, a de-
murrer by the defendant in each action was sustained by
*Hurley,* J., who thereupon reported the actions.

[1] The defendant Eastern Racing Association, Inc., conducted running horse
racing.   The companion cases are similar actions brought by the same plain-
tiff against the following defendants: Revere Racing Association, Inc., which
conducted dog racing;   Massasoit Greyhound Association, Inc., which con-
ducted dog racing;   Taunton Greyhound Association, Inc., which conducted
dog racing;   and Bay State Harness Horse Racing and Breeding Association,
Inc., which conducted harness horse racing.

*J. E. Donovan, Jr.*, pro se (*J. E. Reilly* with him).

*Lee M. Friedman*, (*F. L. Kozol* & *L. M. Levinson* with him,) for Taunton Greyhound Association, Inc.

*A. Broadhurst*, for Eastern Racing Association, Inc.

*J. N. Welch*, for Revere Racing Association, Inc., and another.

*C. M. Goldman*, (*J. S. Slater* & *T. J. Colbert* with him,) for Bay State Harness Horse Racing and Breeding Association, Inc.

LUMMUS, J. These are actions of tort, begun on June 22, 1948, under G. L. (Ter. Ed.) c. 137, §§ 1, 2. Section 1 gives to a person who has lost money or goods by playing at cards, dice "or other game," a right to recover such money or the value of such goods in an action of contract. If the loser "does not within three months after such loss . . . prosecute such action with effect, any other person may sue for and recover in tort treble the value thereof." Section 2 provides a similar penalty against the owner, tenant or occupant of a "house or building" where money or goods are lost "in any form of gaming referred to in the preceding section," with the knowledge or consent of said owner, occupant or tenant.

The action given to a third person after three months is penal. *Cole* v. *Groves*, 134 Mass. 471. *Cole* v. *Applebury*, 136 Mass. 525, 530. *Yarter* v. *Flagg*, 143 Mass. 280. It must be commenced within one year. G. L. (Ter. Ed.) c. 260, § 5. The statute can be traced far back in our provincial history. *Cole* v. *Applebury*, 136 Mass. 525. A bet on a foot race between men (*Jones* v. *Cavanaugh*, 149 Mass. 124) or on the physical ability of animals (*Grace* v. *M'Elroy*, 1 Allen, 563) is gaming within the statute. Betting on a horse race was held within the statute in *Kemp* v. *Hammond Hotels*, 226 Mass. 409, 414.

By St. 1934, c. 374, which by § 3 inserted in our statutes what is now known as G. L. (Ter. Ed.) c. 128A, a great change was made in the public policy of the Commonwealth with respect to gaming on horse and dog racing. The State racing commission was created, and empowered

to license horse and dog racing. By § 5, as amended by St. 1935, c. 454, § 1, "Before holding or conducting a racing meeting, every licensee shall provide a place or places, equipped as hereinafter provided, on the grounds where such meeting is held or conducted or adjacent thereto, but not elsewhere, at which such licensee shall conduct and supervise the pari-mutuel or certificate system of wagering on the speed or ability of horses or dogs performing in the races held or conducted by such licensee at such meeting, and such pari-mutuel or certificate method of wagering upon such races so conducted shall not under any circumstances be held or construed to be unlawful, other statutes of the commonwealth to the contrary notwithstanding. Such place or places shall be equipped with automatic betting machines capable of accurate and speedy determination of award or dividend to winning patrons, and all such awards or dividends shall be calculated by a totalisator machine or like machine, except at state or county fairs."

The same § 5, as amended by St. 1946, c. 575, § 5, goes on to provide that "Each licensee conducting a racing meeting shall become the custodian or depository for such sums as may be deposited with such licensee by patrons as wagers . . . and such licensee shall be responsible for such sum so deposited and shall return to the winning patrons so wagering . . . all sums so deposited as an award or dividend, according to the acknowledged and recognized rules and method under which such pari-mutuel or certificate system has been operated," less a certain small percentage, part of which is payable to the racing commission to the use of the Commonwealth. A better may recover his winnings from a licensee. *Feeney* v. *Eastern Racing Association, Inc.* 303 Mass. 602. *Finlay* v. *Eastern Racing Association, Inc.* 308 Mass. 20.

In these cases the plaintiff does not allege that he bet or lost money on horse or dog races. He alleges that the several defendants, licensees under the statute, operated what was not the pari-mutuel system of betting, but was the combination system of betting, by which patrons bet

on the horses or dogs to win in two successive races, and were to lose if in either race the horse or dog selected failed to win. The plaintiff alleges that many patrons, between certain dates in 1947, bet on such "daily doubles" but lost, and failed to sue within three months, whereby the plaintiff became entitled to sue for the statutory penalty. The plaintiff further alleges that the betting was conducted in certain buildings owned or occupied by the several defendants, and that the betting was conducted with the knowledge and consent of the several defendants. He further alleges that the defendants failed to use an automatic betting machine, totalisator, or like machine.

Each defendant demurred on several grounds. One of the grounds was that "neither the matters set forth in the declaration as a whole nor in any count thereof are sufficient in law to enable the plaintiff to maintain this cause of action." The demurrers were sustained without specification of the ground, and each case was reported to this court.

The plaintiff contends (1) that daily double betting is not within the pari-mutuel system, and (2) that betting in a place not equipped with automatic betting machines and totalisators such as the statute requires, or in which no such machine or totalisator is used, is not within the protection afforded betting under the pari-mutuel system.

Pari-mutuel has been defined as "a form of betting on horses in which those who bet on the winning horse share the total stakes, less a small per cent to the management." In *Feeney* v. *Eastern Racing Association, Inc.* 303 Mass. 602, 605, it was said that under the pari-mutuel system "the total amount wagered, less a certain percentage, retained by the manager of the betting, was distributed to the winning patrons." There is no reason why that system cannot be applied to dog racing as well as horse racing. In *People* v. *Monroe*, 349 Ill. 270, 275, it is said that in the pari-mutuel system of betting, "While the amount of money to be divided is indefinite as to dollars and cents, it is definite in that the amount of money to be divided is the total stakes on the winning horse, less a given percentage to the manage-

ment," and that "The persons among whom the money is to be divided are not uncertain, as they are 'those who bet on the winning horse.'" See also *Weiss* v. *Schachter*, 275 Ill. App. 26. In *Wise* v. *Delaware Steeplechase & Race Association*, 41 Del. 182, 187, it is said that the pari-mutuel system "is nothing more than a division of the pool among the successful contributors in proportion to the respective contributions, or wagers."

It is true that in *Opinion of the Justices*, 249 Ala. 516, 517, it is said without the citation of any authority that "In the operation of a pari-mutuel system, the betting or wagering is limited to the particular race to be run." Whether that is true generally or not, it is not true under our statute. Our statute (G. L. [Ter. Ed.] c. 128A, § 5, as it appeared in the original statute, St. 1934, c. 374, § 3, and as it now appears in St. 1946, c. 575, § 5) permits "wagers on the speed or ability of any one or more horses or dogs in a race or races." By these words we think it was intended to permit the daily double as a part of the pari-mutuel system of betting. The demurrer admits only facts well pleaded, and does not admit the conclusion of law that the system of wagering employed "was not the pari-mutuel system of wagering." *Jones* v. *Dow*, 137 Mass. 119, 121. *Saltonstall* v. *New York Central Railroad*, 237 Mass. 391, 394. *Johnson* v. *East Boston Savings Bank*, 290 Mass. 441, 446–447. *Laughlin Filter Corp.* v. *Bird Machine Co.* 319 Mass. 287, 290. *Sher* v. *Perlman*, *ante*, 390.

The requirements of G. L. (Ter. Ed.) c. 128A, § 5, as amended by St. 1935, c. 454, § 1, that betting places shall be equipped with "automatic betting machines," and that all awards or dividends "shall be calculated by a totalisator machine or like machine," are not by the statute made indispensable incidents of the "pari-mutuel or certificate method of wagering." In *McCall* v. *State*, 18 Ariz. 408, 414, it was said that the game of betting by the pari-mutuel system "might well be played without any machine whatever." Adequate means of requiring the use of the statutory machines is provided in the power to suspend or revoke the

license (G. L. [Ter. Ed.] c. 128A, § 11), and in the penalty for violations provided in G. L. (Ter. Ed.) c. 128A, § 12. We think that the requirement as to machines and totalisator is not a condition of a valid bet under the pari-mutuel system. *Boston* v. *Barry*, 315 Mass. 572, and cases cited in note at page 578.

The order sustaining the demurrer is affirmed in each case, and in each case judgment is to be entered for the defendant. *Keljikian* v. *Star Brewing Co.* 303 Mass. 53.

*So ordered.*