CARL LANDERS *vs.* EASTERN RACING ASSOCIATION, INC.

Suffolk. November 9, 1950. — February 12, 1951.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Racing. License. Quasi Judicial Tribunal. Jurisdiction,* Quasi judicial tribunal. *Constitutional Law,* Racing, Police power, Delegation of powers, Equal protection of laws.

A license issued by the State racing commission pursuant to G. L. (Ter. Ed.) c. 128A, § 3, as inserted by St. 1934, c. 374, § 3, and as amended, to conduct a horse or dog racing meeting, if open to collateral attack, may be so attacked only on the ground that the commission had no jurisdiction to grant it.

Evidence, that a corporation in an application to the State racing commission for a license to conduct a horse racing meeting under G. L. (Ter. Ed.) c. 128A, as inserted by St. 1934, c. 374, § 3, and as amended, in answer to a question required by § 2 (2), incorporated by reference a list of its stockholders on file with the commission; that there were daily changes in the stockholders due to active trading in the stock; that the stockholders named in such list were different to some extent from the stockholders of record on the date of the application; and that the corporation, in answer to questions prescribed by the commission under § 2 (6), incorporated by reference a list, on file with the commission but not available to the public, showing the number of shares of stock held by each stockholder, and stated that to the best of its knowledge no persons other than the stockholders referred to had any beneficial interest directly or indirectly in the stock, although in fact many of them held stock for others, would not have warranted a finding that the commission lacked jurisdiction to issue the license.

The provision of § 2 (6) of G. L. (Ter. Ed.) c. 128A, as inserted by St. 1934, c. 374, § 3, and as amended, that an application to the State racing commission for a license to hold a horse or dog racing meeting shall state "answers to such other questions as the commission may prescribe," empowered but did not compel the commission to obtain information to assist it; the obtaining of such information did not go to the jurisdiction of the commission, which could waive the furnishing thereof or by vote keep information furnished confidential.

Evidence, that shortly before the time of a public hearing held after due

notice by the State racing commission pursuant to § 3 of G. L. (Ter. Ed.) c. 128A, as inserted by St. 1934, c. 374, § 3, and as amended, on an application for a license to hold a horse racing meeting, the place of the hearing was changed from a room specified in the notice to another room in the same building without posting any notice of the change; that the room in which the hearing was held was overcrowded, and many people were barred from entrance by police under the direction of an employee of the applicant; and that the hearing was disorderly with bitter discussion between representatives of the applicant and opponents, did not disclose any impropriety in the hearing which invalidated a license subsequently granted where there was no evidence that the commission acted in other than a fair, unprejudiced and impartial manner.

G. L. (Ter. Ed.) c. 128A, as inserted by St. 1934, c. 374, § 3, and as amended, relating to horse and dog racing meetings, is a valid exercise of the police power, and is not unconstitutional on the ground that it improperly delegates legislative power or that it denies the equal protection of the law.

CONTRACT. Writ in the Municipal Court of the City of Boston dated May 9, 1949.

Upon removal to the Superior Court the action was tried before *Hanify*, J.

*M. Michelson*, (*F. E. Berman* with him,) for the plaintiff.

*A. Broadhurst*, for the defendant.

COUNIHAN, J. This is an action of contract brought under the gaming statute, G. L. (Ter. Ed.) c. 137, §§ 1, 2, in which the plaintiff seeks to recover the sum of $200 lost by him in a bet on a horse race in a building of the defendant. In its answer the defendant set up that it conducted the race under the pari-mutuel or certificate system of wagering by virtue of a license from the State racing commission, hereinafter called the commission, issued to it pursuant to G. L. (Ter. Ed.) c. 128A, inserted by St. 1934, c. 374, § 3, as amended. The action was tried to a jury and on motion the judge directed a verdict for the defendant. The action comes here upon a reservation and report of the judge of the proceedings and matters of law therein with the following stipulation of the parties: "If a verdict for the plaintiff was warranted upon the evidence admitted alone or upon the evidence admitted and evidence improperly excluded and contained in the plaintiff's offer of proof, then judg-

ment is to be entered for the plaintiff in the sum of two hundred dollars ($200), plus interest and costs; if the verdict was properly directed for the defendant, then judgment is to be entered for the defendant with costs."

At the trial it was agreed that on May 7, 1949, the plaintiff attended the defendant's racing place known as "Suffolk Downs" and bet $200 on a horse to win a certain race under the pari-mutuel or certificate system of wagering. He lost the bet. By way of justification a license purporting to be issued by the commission to the defendant under c. 128A, as amended, was offered and received over the exception of the plaintiff. Thereafter the judge, subject to the exceptions of the plaintiff, excluded evidence offered by him to collaterally attack the license. The plaintiff made an offer of proof which included evidence tending to show irregularities in the application for the license filed with the commission by the defendant and in the proceedings at the hearing prior to the consideration of and the issuance of the license by the commission. The plaintiff also excepted to the judge's refusal to rule that G. L. (Ter. Ed.) c. 128A, as amended, is unconstitutional.

There was indubitably a violation of the gaming statute unless what was done was made lawful by c. 128A. *Donovan v. Eastern Racing Association, Inc.* 324 Mass. 393, 394.

The exception to the admission of the license was not argued and is treated as waived.

We have for our consideration three issues: (1) Is it open to a plaintiff in an action of contract under G. L. (Ter. Ed.) c. 137, §§ 1, 2, to collaterally attack the validity of a license issued pursuant to G. L. (Ter. Ed.) c. 128A, as amended, to conduct horse racing and permit betting on such races in the manner provided by that statute? (2) If such attack may be made, is the evidence admitted and the rejected evidence contained in the offer of proof sufficient to warrant the jury in finding that the license was invalid and afforded no protection against recovery permitted under c. 137, §§ 1, 2? (3) Is G. L. (Ter. Ed.) c. 128A, as amended, constitutional?

As to the first issue the defendant concedes that the license may be impeached by certiorari or by proceedings under G. L. (Ter. Ed.) c. 139, § 16, as amended. The license may in any event be attacked collaterally only on the ground that the commission had no jurisdiction to grant it. It has been said, speaking of a board of county commissioners, that "their action is conclusive upon the parties in interest, and not subject to impeachment by collateral attack, unless it appears that the board was without jurisdiction of the subject matter, or the order made exceeded their statutory powers." *Selectmen of Holliston* v. *New York Central & Hudson River Railroad,* 195 Mass. 299, 302. See *Leroy* v. *Worcester Street Railway,* 287 Mass. 1, 5. It is conceded by the parties that proceedings before the commission with reference to the license are quasi judicial in nature, and that courts have no power to substitute their judgment for that of the commission in the exercise of its wisdom and discretion in granting a license. Whether certiorari or proceedings under G. L. (Ter. Ed.) c. 139, § 16, as amended, are exclusive and bar an action like this one we deem it not necessary to decide. We assume for the purposes of this case that this action may lie.

As to the second issue the plaintiff asserts that the agreed facts and the facts recited in the offer of proof were sufficient to warrant the jury in finding that the commission lacked jurisdiction because of noncompliance with the provisions of §§ 2, 3, of c. 128A, as amended.[1] The plaintiff also

---

[1] Sections 2–3 so far as relevant read: "Section 2. Any person desiring to hold or conduct a horse or dog racing meeting within the commonwealth shall make an application to the state racing commission, hereinafter called the commission, for a license so to do. Such application shall state

(1) The name of the applicant.

(2) The post office address of the applicant, and if a corporation, the name of the state under the laws of which it is incorporated, the location of its principal place of business and the names and addresses of its directors and stockholders.

(3) The location of the race track where it is proposed to hold or conduct such meeting.

(4) The days on which it is intended to hold or conduct such meeting, which days shall be successive week days, Saturday and Monday being considered successive week days.

(5) The hours of each day between which it is intended to hold or conduct racing at such meeting, which hours shall be not before twelve o'clock noon

asserts that the place of the hearing required by § 3 and the manner in which the hearing was conducted were such as to be in violation of § 3.

On the agreed evidence and the evidence contained in the offer of proof the jury could find reasonably the following material facts: On December 9, 1948, the defendant filed with the commission an application dated December 9, 1948, for a license under c. 128A, as amended, to hold a horse racing meeting at "Suffolk Downs" located partly in the city of Boston and partly in the city of Revere, from April 30, 1949, to June 7, 1949. The commission on February 2, 1949, voted to issue the license applied for and it was issued on April 22, 1949. The application was on a form prescribed and prepared by the commission, and contained questions some of which were required by § 2 (1), (2), (3), (4), (5), of the statute and some of which were prescribed by the commission under § 2 (6) of the statute. The answers were those of the defendant. All of the answers were satisfactory to the plaintiff except the following: Question 9: "Name and residence of registered or authorized agent upon whom service of process in any proceeding against the applicant pursuant to Chapter 128A of the General Laws of the Commonwealth of Massachusetts and amendments or proceedings in any Court of this State or in the United States District Court for the District of Massachusetts may be made." Answer: "Eastern Racing Association, Inc." Question 13: "Name and residence of all stockholders of the applicant corporation and the number of shares held by each." Answer: "A list of all stockholders, Preferred and Common, is filed with the Massachusetts State Racing Commission. That list is incorporated

---

for horse racing and not before seven o'clock post meridian for dog racing nor later than seven o'clock post meridian for running horse racing nor later than twelve o'clock midnight for harness horse racing and dog racing.

(6) Answers to such other questions as the commission may prescribe."

"Section 3. If any application for a license, filed as provided by section two, shall be in accordance with the provisions of this chapter, the commission, after reasonable notice and a public hearing in the city or town wherein the license is to be exercised, may issue a license to the applicant to conduct a racing meeting, in accordance with the provisions of this chapter, at the race track specified in such application."

herein by reference, as part of this application." Question 14: "Has any corporation, partnership, association or individual other than the stockholders, hereinbefore set forth, any beneficial interest directly or indirectly in the stock held by said stockholders?" Answer: "To the best of our knowledge 'No.'" Question 18: "Does the applicant own premises involved?" Answer: "Yes." Question 18 (d): "State amount of encumbrances against premises involved and the names of the holders of the same, together with the date of maturity thereof." This was not answered. Question 19 was a long one in several parts, almost all of which were answered. There was no plan attached as required by subquestion (g). A financial statement signed by a certified public accountant, showing assets and liabilities and other financial information as of November 30, 1948, was filed with the commission.

Two lists of stockholders of the defendant were on file with the commission on December 9, 1948, when the application was filed, one containing the names and residences of all the stockholders and another containing in addition the number of shares of stock and kind of stock held by each stockholder. The first list was not made available to the public until the hearing on January 20, 1949. The other list was never made available to the public. There was a vote of the commission on December 27, 1939, which was in effect on January 20, 1949, that this other list was received by the commission "as a privileged document." The record holders of the stock of the defendant on December 9, 1948, were different from those named in the lists on file on that day with the commission and the amount of stock held by each stockholder on December 9 was different from that contained in the second list on file on that day. The sets of lists of stockholders filed do not show the true owners of the stock. Many of the names on those lists were names of persons who held stock for other individuals. The commission had knowledge that many of those listed as stockholders in these lists held such stock for others. One of the real owners of stock had been barred before January 20,

1949, from holding shares of stock or having any interest in another race track and other stockholders were men who owned large liquor interests and who had interests in dog racing tracks in Massachusetts or elsewhere.

There was outstanding a large number of shares of common and preferred stock of the defendant and it was traded in actively so that there were daily changes in the stockholders. The sets of lists of stockholders were prepared by Old Colony Trust Company, the transfer agent, as of November 30, 1948, and given to the defendant which filed them with the commission.

The notice which was duly published called for hearings on the application in Revere at the city hall on January 20, 1949, at 2 P.M. and 2:15 P.M. and at the office of the commission, Room 1106, 294 Washington Street, Boston, on January 20, 1949, at 4 P.M. and 4:15 P.M. Shortly before 4 P.M. the hearing in Boston was moved to Room 12 on the mezzanine between the first and second floors of the same building. No notice, placard or sign was posted to that effect. The room in which the hearing was held was thirty-five feet ten inches long, and fourteen feet wide, and contained about forty-eight chairs. There were about eighty-five people in the room at the time of the hearing. The room was difficult of access and it was smoky and hot. Requests were made to no avail to transfer the hearing to another room. Many people outside of the room could not get inside because they were barred by police under the direction of an employee of the defendant. The hearing was disorderly with acrimonious and bitter discussion between representatives of the defendant and those opposed to the application. There is no evidence that the commission or any of its employees had any part in keeping any of the public from the hearing or had any part in the discussion or disorderly proceedings. There is no evidence of fraud or bad faith on the part of any member of the commission.

We are of opinion that, even if the jury found all these facts to be true, they would not warrant the jury in finding that the commission lacked jurisdiction to issue the license.

There was no error in the direction of a verdict for the defendant.

Section 2 of c. 128A, as amended, specifically provides that the application shall state, so far as here relevant, "(2) The post office address of the applicant, and if a corporation, the name of the state under the laws of which it is incorporated, the location of its principal place of business and the names and addresses of its directors and stockholders. (3) The location of the race track where it is proposed to hold or conduct such meeting." An examination of the evidence in the offer of proof discloses that these requirements of the statute were complied with. The objections of the plaintiff to the information contained in the application are without merit. There is nothing in the statute which says that this information must be contained in the four corners of the application and that it cannot be incorporated in the application by reference as was done here. Likewise there is nothing in the statute which requires that the names and residences of the stockholders be given as of any definite date or even that they should be the names and residences of stockholders of record. It is to be assumed that the names and residences of the stockholders of record should be given as of the date of the application. The record discloses that there were one hundred eighty thousand shares of preferred stock and one million, fifty thousand shares of common stock outstanding except for a small amount in the treasury of the defendant. The market for this stock was an active one and there were daily changes of stockholders. The lists of stockholders were prepared by a corporate transfer agent which delivered them to the defendant which filed them with the commission. The offer of proof indicates that the record holders of stock on December 9, 1948, were different from those named in the lists on file then with the Commission. In view of the large amount of stock outstanding and the activity in trading in this stock it is difficult to understand how this could be otherwise. How substantial these differences were does not appear and the jury would have to

speculate as to how material these differences were. That part of question 13 applying to the number of shares held by each stockholder was not required by § 2 of the statute and was prescribed under § 2 (6) for the commission's own information. The information sought in this respect was kept confidential by the commission pursuant to a vote of the commission on December 27, 1939, and in effect as of the day of the hearing on this application. If the commission had a right under § 2 (6) to seek this information, it had a right by vote to keep it confidential.

The plaintiff in his offer of proof asserts that the answer to question 14 on the application, which sought information as to whether or not any persons other than those set forth in the list of stockholders furnished in response to § 2 (2) of the statute had any beneficial interest directly or indirectly in the stock held by such stockholders, invalidated the license. The answer was "To the best of our knowledge 'No.'" The plaintiff asserts that this answer was untrue and that the sets of lists of stockholders filed did not show the true owners (that is, the beneficial owners) of the stock because many of those on the lists of stockholders held stock for others. Questions seeking this information were prescribed by the commission under § 2 (6) and not by § 2 (2).

The plaintiff relies on the decision in *Roman Catholic Archbishop of Boston* v. *Board of Appeal of Boston*, 268 Mass. 416. That case involved the time of giving notice of a hearing on an appeal to vary the application of a zoning law. The statute there made it mandatory for the board of appeal to hold a public hearing and advertise notice thereof, and permitted the board to adopt rules governing procedure. The board adopted rules requiring publication of notice of hearing not less than six days prior to the date of hearing. It was there held that a notice published five days before the date of the hearing was invalid and that the invalidity went to the jurisdiction of the board to consider the application. It was said at page 418, "After the respondent board had specified the way in which notice must be given, it could acquire jurisdiction to deal with the merits of the appeal only

after there had been compliance with that specified way." Proper notice of a hearing by any board clothed with quasi judicial powers is a condition precedent to acquisition of jurisdiction by such board, and failure to give proper notice whether such notice is required by statute or by rules of the board made under a provision of the statute is vital error and cannot be waived by the board.

In the present case § 2 (6) of the statute merely empowered the commission but did not compel it to require "Answers to such other questions as the commission may prescribe." This means that the commission could seek such information as it desired to assist it on passing on the merits of the application before it. Such requests did not go to the jurisdiction of the commission. By waiving the requirement to furnish such information or by refraining from disclosing this information to the public no manifest injustice was done to anyone. *Sears* v. *Mayor & Aldermen of Worcester,* 180 Mass. 288, 289. The decision in *Roman Catholic Archbishop of Boston* v. *Board of Appeal of Boston* has no application to the facts in the case at bar.

The answers in the application complained of by the plaintiff in response to questions prescribed by the commission under § 2 (6) were not considered by the Legislature to be of such paramount importance that it required them to be included in the application. See *Nash* v. *Lang,* 268 Mass. 407, 409; *Faria* v. *Veras,* 298 Mass. 117, 121–122; *Dunn* v. *Merrill,* 309 Mass. 174, 176; *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 308.

We are of opinion that there was not sufficient evidence from which the jury could reasonably find that the essential requirements of § 2 were not complied with or that there was any material departure from the purposes of the statute sufficient to invalidate the license. *Braconier* v. *Packard,* 136 Mass. 50, 53.

We are of opinion too that the evidence fails to disclose any impropriety in the hearing on the application which would invalidate the license. Section 3 of the statute, as amended, provides that "the commission, after reasonable

notice and a public hearing in the city or town wherein the license is to be exercised, may issue a license." There was proper notice of the time and place of the hearing in Boston and in Revere. It is true that, shortly before the time of the hearing, the place of the hearing in Boston was changed to a room on the mezzanine between the first and second floors of the same building without posting any notice to that effect. It is inconceivable, however, that any person interested could not by making reasonable inquiry have found the room where the hearing was ultimately held. Indeed it appears that persons did find the room to such an extent that it was overcrowded and many could not get in. While there was evidence that the hearing was disorderly on account of the overcrowding and otherwise, there was no evidence that the commission acted other than in a fair, unprejudiced, and impartial manner. Apparently there was objection to the granting of this license, but it is to be assumed that the commission acting in good faith considered these objections when it came to pass upon the application. *Slack* v. *Inspector of Buildings of Wellesley,* 262 Mass. 404, 407. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40, 46. *Fleming* v. *Dane,* 304 Mass. 46, 52. *Gahn* v. *Leary,* 318 Mass. 425, 429. See *Whitney* v. *Judge of District Court of Northern Berkshire,* 271 Mass. 448. It may be of significance that no complaint was registered about the hearing in the city hall at Revere.

It is well settled that minor discrepancies or immaterial departures from the literal requirements of a statute or of the licensing authority will not suffice to invalidate a license. It has been said by this court that "It seems to us, that, if these requirements are substantially complied with, so that it appears that the purpose of the statute is satisfied, it is sufficient; and that it would be too strict a construction to hold that any immaterial departure from the literal terms of the statute would invalidate a license." *Braconier* v. *Packard,* 136 Mass. 50, 53. Furthermore "we find nothing in the statute that in terms or by reasonable intendment

prevents the granting of a license upon such an application as was made in this case." *Bushway-Whiting Ice Cream Co. v. Mayor of Somerville,* 308 Mass. 148, 153.

Finally we consider the contention of the plaintiff that c. 128A is unconstitutional. Of several cases which have come before this court growing out of this statute one directly questioned the constitutionality of the statute. In that one, *Mullholland* v. *State Racing Commission,* 295 Mass. 286, at pages 291–292, it was said, "The power to grant the license for a horse racing meeting was vested in the commission. It is the general rule that courts of equity will not interfere to decide questions which have been committed by law to the determination of public officers. Interested parties are left to whatever remedy may be afforded by certiorari or mandamus. . . . An exception to this general rule arises where action is about to be taken by the public board under a void or unconstitutional statute, provided the proposed action will be directly injurious to property rights of the complaining party. . . . No one can question the constitutionality of a statute except one whose rights are thereby impaired." In that case it was decided that the plaintiffs had no private or property rights which were impaired so the question of the constitutionality of the statute was not passed upon. For the purposes of the present case we assume without deciding that the plaintiff has private rights to be vindicated.

The defendant contends that c. 128A is a valid exercise of the police power of the Legislature conferred by the Constitution of Massachusetts, Part II, c. 1, § 1, art. 4.[1] It was said in *Commonwealth* v. *Libbey,* 216 Mass. 356, at page 357, "This is strong language, and it always has been interpreted broadly in its application to statutes enacted from time to

---

[1] "And further, full power and authority are hereby given and granted to the said general court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this commonwealth, and for the government and ordering thereof, and of the subjects of the same, and for the necessary support and defence of the government thereof . . . ."

time by the Legislature to satisfy the changing needs of society." And in discussing this very statute in *Donovan* v. *Eastern Racing Association, Inc.* 324 Mass. 393, at pages 394–395, we said, "a great change was made in the public policy of the Commonwealth with respect to gaming on horse and dog racing. The State racing commission was created, and empowered to license horse and dog racing." In *Selectmen of Topsfield* v. *State Racing Commission,* 324 Mass. 309, at page 315, we declared, "Horse racing with the pari-mutuel system of betting . . . is a form of gambling which has been legalized by the Legislature." In *Commonwealth* v. *Packard,* 185 Mass. 64, at page 65, it was said, "It [the Legislature] can also declare that acts which might be unlawful, if carried to excess, by reason of their general tendency to annoy, and injure others, may be lawfully done, upon such conditions as it may prescribe," and at page 67, "It was within the power of the tribunal designated, after having heard all parties interested, to pass upon and determine whether a license should be issued, and it could either grant or refuse the application. No appeal lay from their decision, and the intention of the Legislature is plain, that after giving due consideration to those who might be inconvenienced and annoyed, and also having a proper regard for the general good order and welfare of the community, their judgment to the extent of the authority conferred is to be treated as a final determination of the rights of the parties interested. Legislation of the class to which this act belongs has been upheld too often for it to be open to the objection that it is unconstitutional." "That the Legislature cannot under our Constitution delegate its general power to make laws is so well settled that a citation of authorities is not necessary. . . . But one of the exceptions to or qualifications of that doctrine is that the Legislature may delegate to a board or an individual officer the working out of the details of a policy adopted by the Legislature." *Commonwealth* v. *Diaz,* 326 Mass. 525, 527, and cases cited. We are of opinion that this principle applies to the present case. It has been repeatedly held that

"One assailing a statute on unconstitutional grounds has the burden of proving the absence of any conceivable grounds upon which the statute may be supported." *Merit Oil Co.* v. *Director of the Division on the Necessaries of Life,* 319 Mass. 301, 305, and cases there cited.

We cannot say that this statute is such that it must be struck down as an unreasonable or unwholesome law. Similar statutes in other jurisdictions have been upheld. *Southern California Jockey Club, Inc.* v. *California Horse Racing Board,* 36 Cal. (2d) 167. *People* v. *Monroe,* 349 Ill. 270. *Rohan* v. *Detroit Racing Association,* 314 Mich. 326.

We are of opinion that c. 128A does not constitute an improper delegation of legislative authority and does not deny the equal protection of law. General Laws (Ter. Ed.) c. 6, § 48, inserted by St. 1934, c. 374, § 2, as amended, established a State racing commission. Chapter 128A constitutes a complete and integrated plan for the regulation and control of horse racing and legalized wagering thereon. Without reciting in detail the directions to and the restrictions imposed upon the commission by the Legislature, it is enough to say that elaborate and detailed procedures are established for the guidance of the commission in granting licenses. *Scannell* v. *State Ballot Law Commission,* 324 Mass. 494, 501. Section 11 of c. 128A provides that "The commission shall have full discretion to refuse to grant a license to any applicant for a license or to suspend or revoke the license of any licensee. If any license is suspended or revoked, the commission shall make a record of its reasons for doing so and such record shall be made available to any person requesting to inspect the same." We interpret this to mean that the commission must allege a cause for the suspension or revocation of a license and if the reasons given are capricious, arbitrary or whimsical recourse may be had by an aggrieved party to certiorari. *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 376, 377.

The plaintiff bases his contention as to the unconstitutionality of the statute on three grounds. (1) It prescribes no standards of guidance for the commission. (2) It oper-

ates to dispense with a general law and grants a privilege and indulgence to a limited number of individuals. (3) It authorizes the Commonwealth to engage in a business of a private nature.

What we have already said disposes of the first contention of the plaintiff. The statute amply provides standards for the guidance of the commission. The second contention of the plaintiff is disposed of by what was early said in *Decie* v. *Brown*, 167 Mass. 290, at page 291, "The limitation of the number of licensed places within the territory of a town or city is a reasonable exercise of the police power, and therefore is not in conflict with the Constitution of the Commonwealth." A short answer to the third contention of the plaintiff is that the Commonwealth is not engaged in the business of conducting horse racing meetings. The statute merely provides that from the operation authorized the Commonwealth shall receive by way of taxes certain moneys to be applied for the beneficent purposes of old age assistance and agricultural development. There is no doubt that the Legislature intended to vest in the commission discretion to pass upon measures to effectually carry out the purposes of the statute. What the limits to that discretion are we find it unnecessary to determine in this action. In accordance with the stipulation, judgment is to be entered for the defendant with costs.

*So ordered.*