CHICAGO DIVISION OF THE HORSEMEN'S BENEVOLENT AND PROTECTIVE AS-SOCIATION *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS RACING BOARD *et al.*, Defendants-Appellants.

(No. 55705;

First District—May 18, 1971.

*Rehearing denied June 22, 1971.*

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Samuel E. Hirsch, Assistant Attorneys General, of counsel,) for appellants.

Robert D. Boyle and William J. Nellis, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is from a judgment entered in an administrative review proceeding.[1] Plaintiffs were two associations of horsemen and one individual who sued on behalf of Illinois licensed race horse owners. Defendants were the Illinois Racing Board, the Jockeys' Guild, its officers and a number of corporate promoters of horse races in Illinois. The controversy concerns Rule 131 of the Illinois Racing Board. On plaintiffs' complaint, the trial judge held that the rule was a nullity.

Defendants argue that this ruling was erroneous. They present two issues.

1. Whether section 37a7 of the Illinois Horse Racing Act prohibits adoption by the Illinois Racing Board of a rule which sets minimum fees a licensee race horse owner must pay a non-contract jockey.

2. Whether adoption of Rule 131 by the Illinois Racing Board deprives the plaintiffs of rights guaranteed by state and federal constitutions.

The parties are in agreement concerning the facts. On April 21, 1970, with notice to all interested parties, and at the request of the Jockeys' Guild, the Illinois Racing Board held a hearing to determine whether Rule 131 should be amended to increase the minimum mount fees a race horse owner must pay a non-contract jockey, that is, one who does not have a special employment agreement with the owner.[2] After hearing the parties, the Board appointed a committee to consider the request of the Guild. The committee met, with notice to interested parties. On

---

[1] Ill. Rev. Stat. 1969, ch. 110, par. 264—279.

[2] The parties agree that in their employment relation with horse owners, there are two classes of jockeys. One class is composed of the more successful jockeys who have contracts or special agreements with horse owners for whom they ride. The other is composed of most jockeys: those who do not have contracts or special agreements with horse owners. This class is known as non-contract or free lance jockeys, or in the language of the race course, as "catch jockeys." It is this latter class of jockeys that is involved in this litigation.

June 9, 1970 the committee recommended to the Board that Rule 131 be amended. The recommendation was adopted and the rule was amended.[3]

| Gross Amount | Winning Mount | Second Mount | Third Mount | Losing Mount |
|---|---|---|---|---|
| $   400 and Under | $27 | $18 | $16 | $15 |
| 500 | 30 | 20 | 17 | 15 |
| 600 | 36 | 22 | 17 | 15 |
| 700-  900 | 10% of Win Purse 25 | | 22 | 19 |
| 1,000-1,400 | 10% of Win Purse 30 | | 25 | 20 |
| 1,500-1,900 | 10% of Win Purse 35 | | 30 | 25 |
| 2,000-3,400 | 10% of Win Purse 45 | | 35 | 30 |
| 3,500-4,900 | 10% of Win Purse 50 | | 40 | 30 |
| 5,000 and Up | 10% of Win Purse 55 | | 45 | 35 |

(Amended June 9, 1970)

Thereafter, plaintiffs filed a complaint seeking administrative review of the Board's action. Count I of the amended complaint alleged that Rule 131 was illegal because it was contrary to section 37a7 of the Illinois Horse Racing Act which provides, in part, that "[t]he Board shall have no right or power to determine who shall be officers, directors or employees of any licensee, or the salaries thereof,  *  *  * "[4] In the other three counts, plaintiffs alleged that the rule violated their freedom of contract and denied them equal protection of the laws in violation of state and federal constitutions.

Defendants appeared and filed an answer consisting of the record before the Board. The trial judge, after overruling motions to dismiss, reviewed the proceedings and in a memorandum decision, found "[t]he Horse Racing Act,  *  *  *  provides that the Board shall have no right to determine the salaries of employees. I hold that jockeys are employees.  *  *  *  [T]hat the Board does not have the power to fix any compensation in the absence of any agreement between the parties; [and that] Rule 131 is a nullity." The decision of the Board was reversed and all defendants were enjoined from enforcing Rule 131. On motion made after the appeal was docketed, we stayed the judgment to await resolution of the issues presented for review.

---

[3] [Rule] 131. Effective June 25, 1970, the fee to a jockey shall be, in the absence of a special agreement:

[4] Ill. Rev. Stat. 1969, ch. 8, par. 37a7.

The first, whether section 37a7 of the Illinois Horse Racing Act prohibits adoption by the Board of a minimum mount fee rule, involves construction of a statute. Plaintiffs rest their contention on a clause of a sentence: "The Board shall have no right or power to determine who shall be officers, directors or employees of any licensee, or the salaries thereof, * * *." The rest of the sentence provides, *"[e]xcept that the Board may, by rule, require that all or any officials or employees in charge of or whose duties relate to the actual running of races be approved by the Board."* (Emphasis supplied.)

■■ In construing this statutory language, the primary object is ascertainment of legislative intent, a fact to be gathered from the entire act, not from one section, sentence or clause. (*People ex rel. Smail v. Board of Education,* 343 Ill.App. 362, 99 N.E.2d 385.) We must examine the language employed, the evil which the legislature sought to remedy and the objective it sought to accomplish. (*People v. Laporte,* 28 Ill. App.2d 139, 11 N.E.2d 95; *Mills v. County of Winnebago,* 104 Ill.App.2d 366, 244 N.E.2d 65.) The words, phrases and sentences of a statute are to be understood as used, with due regard to the statutory context as a whole. And in expounding one part of a statute, resort must be had to every other part. 82 C.J.S. Statutes, § 348.

Therefore, applying these rules of construction, we must ascertain the legislative intent when the Illinois Horse Racing Act was amended in 1941. We find that the legislature intended to create an Illinois Racing Board whose "[j]urisdiction, supervision, powers and duties * * * shall extend * * * to every person, association, corporation or trust which holds or conducts any meeting within the State of Illinois, whereat horse racing is permitted for any stake, purse or reward. * * * The Board shall have full power to prescribe rules, regulations and conditions under which all horse races shall be conducted in the State of Illinois * * * and reasonable rules and regulations regulating participants in horse racing meetings, providing for the prevention of practices detrimental to the public interest and the best interests of racing, * * *." Under the provisions of Section 37 c—2, "[t]he Board may issue licenses to horse owners, * * *" Thus, under the Act, a licensed race horse owner is a licensee. As provided in the exception to the clause on which plaintiffs rely, the Board, by adoption of a reasonable rule, can exercise its jurisdiction and determine the salaries of "[a]ll or any officials or employees [of any licensee] * * * whose duties relate to the actual running of races * * *" thus excluding such officials and employees from the prohibition that "[t]he Board shall have no right or power to determine who shall be * * * employees of any licensee, or the salaries thereof * * *."

This construction comports with the Illinois Horse Racing Act. When the whole of section 37a7 is read together with all other parts of the statute, it becomes clear that the legislature intended to vest the Illinois Racing Board with control over all persons whose duties relate to the actual running of a horse race. Even without knowing the niceties of horse racing, it can be seen that no official or employee of a horse owner has duties more closely related to the running of a race than the jockey, whether or not he has a contract. And certainly, what a jockey is paid has a tendency to influence the availability and the quality of jockeys, hence affecting "[t]he actual running of races  *  *  *." Therefore, in accomplishing its authorized purposes, because the salary of jockeys relate to the running of a horse race, the Illinois Racing Board can adopt a reasonable rule which provides the minimum salary non-contract jockeys shall be paid.

■■ Plaintiffs do not contend that Rule 131 is unreasonable; they insist it is illegal because, as construed in the trial court, section 37a7 deprived the Board of power to adopt a minimum mount fee rule for non-contract jockeys. We conclude that the rule was within the power of the Board to adopt; and that the trial court's construction of section 37a7 was erroneous.

The second issue, whether adoption of Rule 131 deprives plaintiffs of rights guaranteed by state and federal constitutions, involves application of constitutional principles. Plaintiffs contend that the rule invades private enterprise, abridges their freedom of contract; and because the statute that created the Board lacks standards to guide it in adopting a minimum mount fee rule, plaintiffs are denied equal protection of the laws.

■■ These contentions ignore the nature of horse racing under a pari-mutuel system. Horse racing is a privileged enterprise. It is a "[p]ractice or business the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it,  *  *  *  [it] is a legitimate subject for regulation or prohibition by the State,  *  *  *." (*People v. Monroe*, 349 Ill. 270 at 280, 182 N.E. 439.) Analogized with the business of selling liquor, the right to engage in horse racing "[i]s not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise." Compare *Oak Park Nat. Bk. v. Vil. of Broadview*, 27 Ill.2d 151, 154, 188 N.E.2d 679.

■■ It is recognized that a statute which delegates the regulation of a lawful business, one that does not harm public health, safety or morals, must contain standards and guidelines to be followed by those who ad-

minister the delegated powers. However, it is well settled that the regulation of a privileged enterprise may be lawfully delegated to an administrative agency, clothed with power to exercise discretion, without prescribed rules of action. *North Hampton & C. Assn. v. Commission* (1934), 94 N.H. 156, 48 A.2d 472 (1946); and see Annot., 92 A.L.R. 400, 418.

■■ The Illinois Horse Racing Act is a complete and integrated plan for the regulation of horse racing and legalization of pari-mutuel betting.[5] The statute provides for judicial review of any action of the Board that is capricious, arbitrary or unreasonable. (See *Brennan v. Ill. Racing Board*, 42 Ill.2d 352, 247 N.E.2d 881.) We hold that the Illinois Horse Racing Act is not an improper delegation of legislative authority; and that Rule 131, adopted by the Board pursuant to its powers, does not deny plaintiffs any right guaranteed them by the state or federal constitution. *Landers v. Eastern Racing Association, Inc.* (1951), 327 Mass. 32, 97 N.E.2d 385; *State, ex rel., v. Rose, et al* (1936), 122 Fla. 413, 165 So. 347. We reverse the judgment.

Judgment reversed.

STAMOS and GOLDBERG, JJ., concur.

---

[5] Ill. Rev. Stat. 1969, ch. 8, pars. 37a—37r.